### SCHRAM v. PERKINS et al.
### No. 716.

District Court, E. D. Michigan, Southern Division.

April 9, 1941.

Robert S. Marx and Norman P. Burau, both of Detroit, Mich., for plaintiff.

Lewis Daniels, of Detroit, Mich., for defendants.

LEDERLE, District Judge.

1. Plaintiff, B. C. Schram, is the duly appointed, qualified and acting receiver of First National Bank-Detroit, an insolvent national banking association. This suit is in connection with winding up the affairs of said bank.

2. As such receiver, plaintiff is the holder of Exhibit 1, a negotiable promissory note dated January 26, 1933, payable 30 days after date to the order of First National Bank-Detroit, in the original amount of $4,207.41, with interest at 6% per annum. This note was made by "Perkins Bros. Per C. A. Perkins, Perkins Bros. Per J. R. Perkins". The total unpaid according to the terms thereof is $5,160.50, which includes interest to this date.

3. On February 27, 1939, plaintiff instituted this suit on said note, naming as defendants, "Clyde A. Perkins and Jesse R. Perkins, jointly and individually and as copartners doing business as Perkins Brothers." Defendants answered, pleading that the liability of themselves, individually and as partners, and the liability of the partnership entity, on said note, had been discharged in 1935 by the consummation of a composition with creditors in voluntary bankrutcy proceeding number 18011, in this court, in which proceeding plaintiff was a party-claimant and recipient of a pro rata share of composition payments.

4. At the trial plaintiff limited his request for relief to a joint judgment against the partners.

5. Defendants attempted to prove as a fact that the composition had been of the debts and liabilities of the partners as well as of the partnership entity.

6. The bankruptcy files and records were introduced into evidence, and the court has carefully examined the same, which examination discloses the following: On September 28, 1934, voluntary petition and schedules in bankruptcy were filed in the matter of "Perkins Bros., a co-partnership, Bankrupt", for which a fee of $30 was paid to the Clerk. There was one set of schedules filed, which schedules were uniformly signed "Perkins Bros., by Clyde A. Perkins, Jesse R. Perkins". The petition lists the two business places of the partnership, and the space provided for residence of a petitioning bankrupt is left blank. No separate schedules were filed by either partner. The affidavits attached to Schedule A, as to debts, and to Schedule B, as to assets, designated "Clyde A. Perkins and Jesse Raymond Perkins, copartners doing business as Perkins Bros.," as affiants. Throughout the proceedings, pleadings were captioned "In the Matter of Perkins Bros., a copartnership", and referred to the bankrupt in the singular, in many instances designating the bankrupt as "it". Of six wage claims listed in Schedule A–1, two were as follows: "C. A. Perkins, $44.94", and "J. D. Perkins, $30.00". Opposite each of these amounts in the referees' file appears the penciled word "waived". Among waivers of composition dividends was one signed by Clyde A. Perkins and another signed by Jesse D. Perkins. Nowhere were these wage claims listed as assets of the individual partners. Adjudication having been stayed pending a composition, an order was entered on October 8, 1934, reading as follows:

"Upon reading and filing the petition of Perkins Bros., a copartnership, setting up the fact that it filed voluntary petition in bankruptcy and that the said copartnership is desirous of offering a composition to its creditors, as stated in the petition filed herein, it is hereby ordered that Perkins Bros., a copartnership, be and is hereby authorized to file an offer of composition."

On the same day, the offer of composition was filed. It was captioned "In the Matter of Perkins Bros., a copartnership, Bankrupt", and was directed to "Creditors of Perkins Bros., a copartnership". The terms of the offer referred to the offerees as "creditors of the undersigned", and it was signed at the bottom as follows: "Perkins Bros., a copartnership, By: Clyde A. Perkins; By: Jesse R. Perkins".

Upon petition signed in the same manner, an order was entered by the court on October 8, 1934, setting forth that upon reading and filing the petition of Perkins Bros., a copartnership, relative to composition, the matter was referred to referees to call a meeting of creditors to consider the offer "made by the bankrupt herein". The very detailed inventory and appraisal were composed solely of merchandise, furniture and fixtures and equipment at the two business places of the partnership. The appraised replacement value was $17,668.65, and appraised present market value was $5,368. The composition offer was 5% cash and 5% in notes. The cash deposited for the composition was $5,960.48, which included administration expenses of $830.74. Notices to appear for consideration of the composition offer were directed to "Creditors of Perkins Bros., a copartnership", and stated that there would be "an examination of the Bankrupt". Clyde A. Perkins alone submitted to the statutory examination relative to composition offer. Jesse R. Perkins was not examined. Acceptances were "of the offer of composition in the above estate", under a caption reading "Perkins Bros., a copartnership". The report of the referee on the offer of composition listed eleven waived claims, including the following: Creditor Clyde A. Perkins, Amount of Claim $44.94, amount of dividend $44.94; and creditor Jesse D. Perkins, amount of claim $30, amount of dividend $30. Petition for confirmation of composition was captioned "In the Matter of Perkins Bros., a copartnership, Bankrupt", was signed "Perkins Bros., By: Clyde A. Perkins", stated that a schedule of the property and list of "its" creditors had been filed, that composition had been accepted, and that the consideration to be paid "its" creditors had been deposited. To this was attached an affidavit of Clyde A. Perkins, that "the said copartnership" had not promised or paid any consideration to anyone in connection with the composition proceedings except as stated in the offer of composition

and that he knew of no such payment or promise by anyone else "in and for the behalf of the said copartnership". No like statement or affidavit was made relative to promises or payments of either partner. The order to show cause on application for confirmation, the order confirming the composition, and the order for distribution of composition deposit refer to "the Bankrupt" throughout, and are captioned "Perkins Bros., Bankrupt". Neither the individual partners nor their creditors are mentioned in connection with the composition. There are other instances throughout the proceeding where the petitioning bankrupt is designated as "Perkins Bros., a copartnership".

7. It was the contention of defendants' counsel that each defendant had listed all his individual as well as partnership assets and liabilities, and that the offer had been made, accepted and confirmed for composition of all such liabilities. Both defendants testified at the trial. Each stated explicitly that he had listed all his individual assets in the bankruptcy schedules. Neither testified that he had listed all his individual liabilities. Each testified that he had never advised plaintiff that they included individual assets or liabilities in the bankruptcy and composition proceedings. The liquidator who handled plaintiff's claim at the time of the bankruptcy and composition testified, without contradiction, that he remembered very distinctly having discussed with defendants' attorney, who was also attorney for the bankrupt, the matter of the omission of the individual partners from the bankruptcy petition.

8. There was nothing to indicate that anything other than the partnership entity was involved in the bankruptcy proceedings and the composition therein.

■ 9. On this record I must, and do, find that the offer was made for composition of the liabilities of the partnership entity only, and was accepted and confirmed as such.

### Conclusions of Law.

■ 1. District Courts of the United States have jurisdiction of suits in connection with winding up the affairs of insolvent national banking associations, which includes this case. 28 U.S.C.A. § 41 (16); Dinan v. First Nat. Bank of Detroit, 6 Cir., 117 F.2d 459, decided Feb. 10, 1941.

■ 2. Defendants rely strongly upon one sentence in Francis v. McNeal, 228 U.

S. 695, 33 S.Ct. 701, 703, 57 L.Ed. 1029, L.R.A. 1915E, 706, that "it would be a third incongruity to grant a discharge * * * from the debt considered as joint, but to leave the same persons liable for it considered as several", and upon the case of Abbott v. Anderson, 265 Ill. 285, 106 N.E. 782, L.R.A. 1915F, 668, Ann.Cas.1916A, 741. In this connection there are three salient facts, namely:

(a) The sentence quoted from Francis v. McNeal, supra, was dictum in a case which "merely involved the question whether a bankruptcy court in which an insolvent partnership had been adjudicated a bankrupt might under the administrative provisions of section 5 [11 U.S.C.A. § 23] require a partner who had not been adjudged a bankrupt to surrender his individual property to the trustee of the partnership estate for the purpose of paying the partnership debts." Liberty Nat. Bank v. Bear, 276 U.S. 215, 48 S.Ct. 252, 255, 72 L.Ed. 536.

(b) Abbott v. Anderson, supra, is, as aptly described in First Nat. Bank v. Poland Union, 2 Cir., 109 F.2d 54, 57, certiorari denied, 309 U.S. 682, 60 S.Ct. 723, 84 L.Ed. 1026, the "chief * * * of a few isolated cases" contrary to the general holding of the courts; and

■ (c) Unlike Illinois, it is the law of Michigan that a partnership is a distinct legal entity, separate from the individual partners composing it; 1929 Mich. Compiled Laws, Sec. 9846 et seq; Thurston v. Asphalt & Paving Co., 226 Mich. 505, 198 N.W. 345.

■ 3. Partners are jointly liable for partnership debts, such as partnership notes and contracts, and jointly and severally liable for other partnership obligations, which roughly includes partnership torts. 1929 Mich. Compiled Laws, Sec. 9855; Rath v. Kelly, 246 Mich. 25, 224 N.W. 377; Lenger v. Hulst, 259 Mich. 640, 244 N.W. 187; Soberg v. Sanders, 243 Mich. 429, 220 N.W. 781.

■ 4. The main attribute of a joint liability, as distinguished from a several or a joint and several liability, is the right of one joint obligor to insist that his co-obligor be joined as a co-defendant with him, i. e.: that they be sued jointly. Searles v. Reed, 63 Mich. 485, 29 N.W. 884; Van Leyen v. Wreford, 81 Mich. 606, 45 N.W. 1116; Rath v. Kelly, 246 Mich. 25, 224 N.W. 377; Soberg v. Sanders, 243 Mich. 429, 220 N.W. 781; Stewart v. Terwilliger, 177 Mich. 313, 143 N.W. 17, Ann.Cas. 1915C, 808; Hempel v. Circuit Judge, 222 Mich. 553, 193 N.W. 281.

■ 5. A partnership may proceed and be proceeded against in bankruptcy as an entity distinct from the individual partners; Liberty Nat. Bank v. Bear, 276 U.S. 215, 48 S.Ct. 252, 72 L.Ed. 536; Farley & Co. v. Stoll, 250 Mich. 495, 231 N.W. 71; and, after adjudication and discharge in bankruptcy of the partnership only, the partners are still jointly liable for debts of the partnership, such as notes. Schram v. Wrubel & Kozin, 38 F.Supp. 357, this court.

■ 6. "A composition is 'a settlement of the bankrupt with his creditors'—in a measure superseding and outside the bankruptcy proceedings—which originates in a voluntary offer by the bankrupt, and results from voluntary acceptance by his creditors. The respective rights of the bankrupt and the creditors are fixed by the terms of the offer, and upon confirmation of the composition they get what they 'bargained for', and no more." Myers v. International Trust Co., 273 U.S. 380, 383. 47 S.Ct. 372, 71 L.Ed. 692; Farley & Co. v. Stoll, 250 Mich. 495, 231 N.W. 71.

■ 7. The composition in question having been offered by the partnership entity to its creditors for the discharge of its liability to them, without reference to the liability of the partners themselves, and, as such, accepted and confirmed, plaintiff is entitled to judgment against defendants Clyde A. Perkins and Jesse R. Perkins, jointly, for $5,160.50, with costs to be taxed in plaintiff's favor.