**ONYX WASTE SERVICES, INC., Plaintiff,**

v.

**David A. MOGAN, Defendant.**

**No. 02–CV–71051–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

April 11, 2002.

Scott E. Dwyer, Andrea D. Crumback, Mika, Meyers, Grand Rapids, MI, for Plaintiff.

Ruben Acosta, Fink, Zausmer, Detroit, MI, Victor J. Torres D'Agostini, Sable, Sterling Heights, MI, for Defendant.

## OPINION AND ORDER

ZATKOFF, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction. Defendant responded and Plaintiff replied. Also before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. Plaintiff responded, Defendant replied, Plaintiff filed a sur-reply, and Defendant filed a reply to Plaintiff's sur-reply.[1] The Court held a

---

1. On March 19, 2002, the Court, upon motion by Plaintiff, issued a temporary restraining order to enforce the non-competition agreement at issue in this case, the effect of which precludes Defendant from working in the waste management business until this matter is resolved. *See* discussion *infra* Part II. At 2:00 p.m. on March 25, 2002, the Court held a hearing to determine whether a preliminary injunction should issue pursuant to FED. R. CIV. P. 65. At 10:07 a.m. on the day of the hearing, Defendant filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction. Approximately 30 minutes before the 2:00 hearing, Plaintiff presented corporate documents which purported to refute the allegations in Defendant's motion. Defendant's brief did not discuss the indispensability of any nonparty pursuant to FED. R. CIV. P. 19. During the hearing however, the indispensability of a non-party to this action was briefly mentioned by Defendant, a non-party that, if added, would destroy the Court's diversity jurisdiction. *See* discussion *infra* Part IV.B. Because the important issue of subject matter jurisdiction was raised at the eleventh hour before the hearing, at the conclusion of the hearing the Court ordered Plaintiff to respond to Defendant's brief. Plaintiff received the Court's permission to respond only to the issues raised in Defendant's initial brief, and if Defendant elaborated on the indispensability issue in his reply, Plaintiff could file a sur-reply limited to addressing the indispensability issue. Upon filing its sur-reply to that issue, Defendant expressed concern that as the moving party, he should receive the "proverbial last word," and be permitted to file a three-page reply to the sur-reply. The Court granted this request.

hearing on March 25, 2002, during which the sole issue before the Court was the adequacy of the Court's subject matter jurisdiction, which is based on the diverse citizenship of the parties pursuant to 28 U.S.C. § 1332. At the conclusion of the hearing the Court ordered the parties to brief this critical issue as expeditiously as possible. The elaborate parade of briefs mentioned above concluded at 4:58 p.m. on Friday, April 5, 2002. For the reasons set forth below, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is GRANTED. It is FURTHER ORDERED that the Court's March 19, 2002 temporary restraining order is HEREBY SET ASIDE, and that this case is DISMISSED WITHOUT PREJUDICE pursuant to FED. R. CIV. P. 12(b)(7).

## II. BACKGROUND

### A. Merits of Plaintiff's Claim

Plaintiff, alleging to be a Wisconsin-based waste management company, filed a five-count verified complaint in this Court, based on diversity jurisdiction, alleging that Defendant, a former employee and Michigan resident, misappropriated trade secrets in violation of Michigan law and a non-competition agreement signed between the parties. In addition to a claim alleging Defendant breached the non-competition agreement, Plaintiff alleges that Defendant's actions violated the Michigan Uniform Trade Secrets Act, see MICH. COMP. LAWS § 445.901 et seq., and the Michigan common law doctrines prohibiting unfair competition, breaching a fiduciary duty, and interfering with contractual and business relations. Plaintiff also filed a Motion for a Temporary Restraining Order seeking to compel Defendant to abide by the terms of the agreement.

Non-competition agreements are enforceable in accord with Michigan Compiled Laws (hereinafter "M.C.L.")

§ 445.774a, which provides in relevant part:

An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

MICH. COMP. LAWS § 445.774a(1). The February 4, 2001 agreement between Plaintiff and Defendant essentially acknowledged that Defendant, in consideration of his employment with Plaintiff, shall not compete with Plaintiff during his employment with Plaintiff or two years thereafter within sixty-five miles of any location for which Defendant was responsible during the last two years of his employment with Plaintiff. Defendant further agreed to refrain from contacting or soliciting any of Plaintiff's customers for services that are substantially similar to the services provided by Plaintiff in accord with the abovementioned terms of duration and geography. Defendant further agreed not to use or disclose any proprietary information acquired during his employment with Plaintiff. Defendant also acknowledged that Plaintiff shall be entitled to injunctive relief should Defendant violate the agreement.

Plaintiff alleges that during his employment with Plaintiff, Defendant negotiated an employment agreement with Heritage Interactive Services, LLC, a subsidiary of

Heritage Environmental Services, Inc. (hereinafter "Heritage") and a direct competitor of Plaintiff in the waste management industry. Plaintiff further alleges that Defendant attempted to undermine Plaintiff's important business relationship with Ford Motor Company by failing to order necessary equipment to complete a project for Ford. Plaintiff further alleges that Defendant injured its financial credibility in the market by ordering $468,000 in equipment without authorization.

Defendant tendered his resignation to Plaintiff on November 13, 2001 and ceased employment with Plaintiff on November 27, 2001. Approximately seven to ten days later, Plaintiff alleged Defendant violated the non-competition agreement by obtaining employment with Heritage. Plaintiff also alleged that Defendant was continuing to violate the agreement by performing services for Heritage that are substantially similar to the services he performed for Plaintiff. Further, Plaintiff alleges that Defendant continues to solicit and induce Plaintiff's key customers, including Ford Motor Company, to do business with Heritage, which also is a direct violation of the non-competition agreement. Specifically, Plaintiff avers that on February 13, 2002, Defendant used his knowledge of Plaintiff's bidding process to bid against Plaintiff on a key recycling job for Ford and secure the job for Heritage.

On March 19, 2002, the Court issued a temporary restraining order, based on Plaintiff's verified complaint, which found the terms of non-compete agreement viable in accord with M.C.L. § 445.774a, and essentially ordered Defendant to comply with its terms by not competing against Plaintiff with Heritage Interactive Services, LLC, or any other competitor, in accord with the terms of duration and geography. The Court ordered both parties to appear before it at 2:00 p.m. on March 25, 2002, to consider whether a preliminary injunction should issue in this matter.

## B. Subject Matter Jurisdiction

At 10:07 a.m. on the day of the injunction hearing, Defendant filed its motion to dismiss, alleging that this Court lacked subject matter jurisdiction because the parties' citizenship was not diverse. In support of his motion, Defendant presented documents from the Michigan Department of Consumer and Industry Services, including Articles of Incorporation, which represented that "Onyx Waste Services, Inc." was a Michigan profit corporation. The documents indicated that Articles of Incorporation were filed for an entity styled "Superior Services of Michigan, Inc." on February 24, 1997. On March 31, 2000, Superior Services of Michigan, Inc. filed a Certificate of Amendment to its Articles of Incorporation which reflect that the name of the corporation was changed to Onyx Waste Services, Inc. The Michigan Department of Consumer and Industry Services certified that the copies of the corporate filings of Onyx Waste Services, Inc. are entitled to full faith and credit in every court and office within the United States.

Defendant argues that because 28 U.S.C. § 1332(c) makes a corporation a citizen of "any State by which it has been incorporated," and Defendant is a citizen of Michigan, the Court does not have subject matter jurisdiction over the matter at bar. In the first paragraph of Plaintiff's verified complaint, it states that "Plaintiff Onyx Waste Services, Inc.[,] formerly known as Superior Services, Inc.[,] at all times relevant to the incidents alleged in this Complaint, is a Wisconsin corporation." Appended to this statement is a footnote which explains that Superior Services, Inc. became Onyx Waste Services, Inc. on January 2, 2002. Defendant avers

that even if Plaintiff is also incorporated in Wisconsin under the exact same corporate name as the Michigan entity, it is still considered a citizen of "any State by which it has been incorporated," and therefore diversity is destroyed in this case.

At the preliminary injunction hearing on March 25, Ms. Karen K. Duke, Assistant General Counsel for the Wisconsin corporation and Secretary for the Michigan corporation, testified that the Michigan corporation is a wholly-owned subsidiary of the Wisconsin corporation. Ms. Duke also testified that the Wisconsin corporation was formerly known as Superior Services, Inc., but changed its name to Onyx Waste Services, Inc. on January 2, 2002, approximately two months after Defendant left the employ of Plaintiff, then known as Superior Services, Inc. In its brief, Plaintiff attached documents from the Wisconsin Department of Financial Institutions, Division of Corporate and Consumer Services, which certify the history of the Wisconsin entity's corporate organization. The documents reflect that the Wisconsin entity was originally incorporated on July 7, 1992 under the name Waste Holding Company, Inc., changed its name to Superior Environmental Services, Inc. on November 4, 1992, changed its name again to Superior Services, Inc. on January 1, 1994, and changed its name a third time to Onyx Waste Services, Inc., the named party in this action, on January 2, 2002.

In an attempt to establish the corporate independence of the two corporations, Ms. Duke testified that the Michigan and Wisconsin corporations have separate federal tax identification numbers. In its response brief, Plaintiff presents the affidavit of Paul Jenks, Chief Executive Officer of Onyx Waste Services, Inc., the Wisconsin corporation. Mr. Jenks states that the Wisconsin corporation manages solid waste businesses and provides support services to subsidiaries throughout the United States for clients nationwide. Mr. Jenks states that the Michigan corporation's business activities include collecting solid waste within Michigan, operating transfer stations in Michigan where waste is consolidated, and operating a material recovery facility and other related businesses within the State of Michigan.

Mr. Jenks also swore, under penalty of perjury, that the Michigan corporation "has its own managers and officers." However, Mr. Jenks fails to address the Michigan corporation's Profit Corporation Information Update, filed with the Michigan Department of Consumer and Industry Services on May 31, 2001. This document reflects that Mr. Jenks is one of two named Vice Presidents of the Michigan corporation. Further, as indicated earlier, Ms. Duke is listed as the Secretary of the Michigan corporation and also serves as the Assistant General Counsel and Assistant Secretary of the Michigan corporation. In addition, this document shows that the Secretary, Treasurer, Assistant Secretary, and one Director of the Michigan corporation reside or do business in Wisconsin. Although this lack of candor may have some explanation, Plaintiff fails to provide one.

Another interesting development at the injunction hearing was the fact that Defendant worked in Michigan and received his paychecks from the Michigan corporation. Further, the W–2's issued to Defendant from "Onyx Waste Services, Inc." list the federal employer identification number of the Michigan corporation. Defendant points out that "Onyx Waste Services, Inc." in Wisconsin did not exist under that name until January 2002, months after Defendant's departure from then Superior Services, Inc. Plaintiff also does not refute Defendant's assertion that he "consistently worked out of the Six Mile Road offices in Northville, Michigan, . . . which is the

principal place of business of the Michigan corporation."

Plaintiff responds by maintaining that Defendant was hired by the Wisconsin corporation and reported, and ultimately submitted his resignation, to Paul Jenks, then the Wisconsin corporation's vice president for special projects. Plaintiff further states that "Defendant did not report to anyone at Onyx Michigan." Again, Plaintiff fails to address the fact that Mr. Jenks is listed as one of the vice presidents of the Michigan corporation. Plaintiff also states that while Defendant did receive his paychecks from the Michigan corporation, it was the Wisconsin corporation "that provided the money." Plaintiff concludes by stating that since parent and subsidiary corporations are treated as separate entities for purposes of diversity jurisdiction, and because the Wisconsin corporation is the entity moving in this matter, there is complete diversity in the action at bar.

To complicate matters further, on March 27, 2002, two days after the preliminary injunction hearing, the Wisconsin corporation styled Onyx Waste Services, Inc. obtained from the Michigan Department of Consumer and Industry Services a Certificate of Authority to Transact Business or Conduct Affairs in Michigan. On the same day, the Michigan corporation styled Onyx Waste Services, Inc. changed its name to "Onyx Waste Services of Michigan, Inc."

Defendant presents three arguments in his response brief. First, he states that even if the Michigan corporation is a subsidiary of the Wisconsin corporation, the plain language of 28 U.S.C. § 1332(c)—that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated"—mandates a finding that because the Michigan corporation is incorporated in Michigan, diversity is destroyed. Defendant points out that the statute "does not carve out exceptions for corporations identically named that are subsidiaries of the parent." Defendant states in a footnote that the already substantial ties between the Michigan and Wisconsin corporations are a reliable indication that they may be "alter egos" of each other and that Plaintiff may be deemed a citizen of Michigan. Responsibly, Defendant declines to rest on this argument in the recognition that an adjudication on this issue requires more discovery.

In his second argument, Defendant maintains that the Michigan corporation is the real party in interest pursuant to FED. R. CIV. P. 17(a). To support this assertion, Defendant cites the opening paragraph of the non-competition agreement, which provides that Defendant agrees to the terms of agreement "in consideration of [his] employment by Onyx North America Corp. ('Onyx') or Superior Services, Inc. or Onyx Industrial Services, Inc. or Onyx Environmental Services, Inc. or Monetary International Corp. or a subsidiary of the foregoing entities, and/or the compensation paid or to be paid to [him] . . . ." Paragraph one of the agreement defines the term 'Onyx' as including "Onyx and all of its subsidiaries, divisions or affiliates. The terms of this Agreement will be binding upon [Defendant] whether [he is] employed by Onyx or any subsidiary, division or affiliate of Onyx or any successor thereto (the 'Onyx Group')."

Defendant concludes that the agreement seeks to prevent Defendant from competing against the Wisconsin corporation and "all subsidiaries," including the Michigan corporation. Therefore, Defendant concludes that the "Michigan subsidiary is a real party to this controversy whose interests are purportedly being represented by its Wisconsin parent corporation." Therefore, the Michigan corporation should be added to this action, which destroys this Court's diversity jurisdiction.

Defendant's final argument is that the Michigan corporation is a necessary and indispensable party under FED. R. CIV. P. 19. Rule 19(a) provides in pertinent part:.

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party . . . .

FED. R. CIV. P. 19(a).

If joining a party deemed necessary under Rule 19(a) will destroy diversity jurisdiction, the Court must determine whether the action should proceed without the absent party or be dismissed. This determination is made in accord with Rule 19(b), which provides:

If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED. R. CIV. P. 19(b).

Addressing the elements of Rule 19(a), Defendant avers that this Court cannot accord complete relief in the absence of the Michigan corporation because the agreement makes the Michigan subsidiary a party to it, and therefore Plaintiff is seeking to enforce the agreement on behalf of the Michigan corporation. Defendant also states that, under Rule 19(a)(2)(i), failure to join the Michigan corporation will "impair or impede" its ability to protect its interests under the agreement. Defendant supports this assertion by stating that "[w]ithout being present in this action, the Michigan subsidiary cannot demonstrate that its competitive business interests are threatened, an indispensable element in demonstrating the reasonableness of enforcing the [agreement] against Defendant in Michigan."

However, Defendant's most persuasive argument falls under Rule 19(a)(2)(ii), wherein he states that "by failing to add the Michigan subsidiary as a party, [Defendant] runs the substantial risk of incurring double, multiple, or otherwise inconsistent obligations as a result of the claimed interest. Because this Court is not in a position to adjudicate whether the Michigan subsidiary has any rights under the [agreement], it is likely, given Onyx's aggressive interpretation of that agreement, that the Michigan subsidiary will bring [an] action in Michigan state courts to enforce that agreement. If that happens, [Defendant] would then be subject to the substantial risk of inconsistent obligations imposed on him by potentially dif-

ferent results reached by this Court and a state tribunal."

Defendant concludes that because the Michigan corporation is an indispensable party to this action, it must be joined. However, because joining the Michigan corporation would destroy diversity jurisdiction, it cannot be joined and therefore this Court should dismiss this action. Defendant does not address whether this case should nonetheless proceed in the Michigan corporation's absence in accord with the factors under Rule 19(b).

Plaintiff responds that the Wisconsin corporation is the real party in interest because it is that entity, not the Michigan corporation, that is asserting contractual rights against Defendant. Plaintiff states that the Wisconsin corporation is the injured party in this action and that the Michigan corporation has no standing to bring the specific claims currently alleged against Defendant. Plaintiff maintains that "although Onyx of Michigan may benefit from the relief sought by Onyx of Wisconsin, that benefit is irrelevant to determining diversity."

Finally, Plaintiff argues that the Michigan corporation is neither a necessary or indispensable party to this action. Regarding Rule 19(a)(1), Plaintiff avers that complete relief can be accorded among the parties already involved in the lawsuit. Plaintiff maintains that Defendant breached the terms of the agreement only as they apply to the Wisconsin corporation and that Plaintiff has not asserted that Defendant has breached the agreement against the Michigan corporation. Plaintiff employs this same reasoning in rebutting Defendant's contention that the Michigan corporation has an interest in this action that will be impeded in its absence under Rule 19(a)(2)(i).

Regarding Rule 19(a)(2)(ii), Plaintiff states that Defendant will not be subject to redundant and inconsistent obligations be-cause the Michigan corporation has no right to bring suit against Defendant for competition against the Wisconsin corporation, despite the fact that all are parties to the agreement. In a revealing statement in its sur-reply, Plaintiff states:

> Admittedly, Onyx of Michigan may have rights that arise out of the same contract, but those rights are separate from those of Onyx Wisconsin. If it was necessary, Onyx of Michigan could act to protect its own rights in the contract, but the fact that Onyx of Michigan may have rights it may enforce against [Defendant], does not mean that Onyx of Wisconsin does not also have the right to enforce the contract against [Defendant] based on his breach of duty to Onyx of Wisconsin.

Plaintiff maintains that even if Defendant is a necessary party to this action under Rule 19(a), it is not an indispensable party under Rule 19(b). Essentially, Plaintiff reiterates its position that Defendant breached his duties to the Wisconsin corporation, and that entity is not seeking to enforce the Michigan corporation's rights in the agreement.

## III. ANALYSIS

The Court finds that although facts may arise during discovery that would impute the Michigan subsidiary's citizenship to the Wisconsin parent under the "alter-ego" doctrine, the Court need not reach this question as it finds that the Michigan corporation is a necessary and indispensable party to this action under FED. R. CIV. P. 19.

### A. Alter–Ego Doctrine and Diversity Jurisdiction

The Federal Circuits diverge on the issue of whether and when it is appropriate to "pierce the corporate veil" by imputing the citizenship of the parent cor-

poration to the subsidiary in a suit involving the subsidiary, or "reverse pierce" by imputing the citizenship of the subsidiary to the parent in a suit involving the parent. *See* 15 MOORE'S FEDERAL PRACTICE ¶ 102.56[7][b] (3d ed.2000). The rule in the Sixth Circuit is unequivocal: when formal separation is maintained between a parent and subsidiary corporation, federal court jurisdiction is determined by the citizenship of the party to the lawsuit. *See Schwartz v. Electronic Data Sys., Inc.*, 913 F.2d 279, 283 (6th Cir.1990).

However, the Sixth Circuit does recognize exceptions to this general rule where "subsidiaries [are] not actually separate corporate entities." *Id.* at 283–84. In *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553 (5th Cir.1985), as in the case at bar, plaintiff sued a parent corporation. In imputing the subsidiary's citizenship to the parent and thus destroying diversity jurisdiction, the Court "refused to elevate form over substance" and found that the subsidiary was primarily responsible for the offending conduct. *See Freeman*, 754 F.2d at 557. In so holding, the court found that "[a]lthough each retained its own articles of incorporation and its own accounts, those accounts were kept in the same office by the same employees, who may have worn two hats but who received their salaries from one payroll." *Id.*

As mentioned *supra*, Defendant was paid by the Michigan corporation, received W–2's with the Michigan corporation's federal employee identification number, both corporations shared several corporate officers and directors, Defendant worked in Michigan and out of the Michigan corporation's principal place of business, the Wisconsin corporation was neither authorized or licensed to conduct business in Michigan prior to March 2002, both corporations were parties to the non-compete agreement with Defendant, the agreement and the parties to it are governed entirely by Michigan law, and Defendant reported and resigned to an individual who is listed as serving as the CEO of the Wisconsin corporation and vice-president of the Michigan corporation. It is important to note that all of this information was uncovered by Defense counsel before it had a chance to conduct formal discovery.

Underlying the *Freeman* court's decision was the important policy of limited federal jurisdiction: furthering the intent of Congress " 'to minimize and reduce the caseload of federal courts based upon diversity' " by providing for multiple corporate citizenship in 28 U.S.C. 1332(c). *See id.* at 558 (citing S.Rep. No. 1830, 85th Cong., 2d Sess., *reprinted in* 1958 U.S. CODE CONG. & AD. NEWS 3099, 3101–02). This policy serves to deny federal jurisdiction to actions that are wholly local in character. *See Freeman*, 754 F.2d at 558–59.

However, because the Court finds that the Michigan corporation is a necessary and indispensable party to this action, the Court need not rest its decision on the abovementioned principle.

## B. Indispensability of the Michigan Corporation

■ The Court finds that the Michigan corporation is a necessary party to this action pursuant to FED. R. CIV. P. 19(a)(2)(ii). Further, the Court finds that in equity and good conscience this action should be dismissed as the non-diverse Michigan corporation is an indispensable party under FED. R. CIV. P. 19(b).

### 1. Necessity of the Michigan corporation to this action

Rule 19(a)(2)(ii) provides that a person

"*shall* be joined as a party in the action if . . . the person claims an interest *relating* to the subject of the action and is so situated that the disposition of

the action in the person's absence *may* ... leave any persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

FED. R. CIV. P. 19(a)(2)(ii) (emphasis added). "If the absent party has a legally protected interest *in* the subject matter of the action—i.e., he is a party to a contract at issue—he falls squarely within the terms of Rule 19(a)(2)." *Burger King Corp. v. American National Bank and Trust Co. of Chicago*, 119 F.R.D. 672, 675 (N.D.Ill.1988). Further, Rule 19(a)(2) only requires that the absent party have an interest *"relating* to" the subject matter of the action, not that the absent party have a direct interest *in* the action at bar. *See id.* at 676.

In the matter at bar, it is clear that the Michigan corporation, by Plaintiff's own admission and by the plain language of the agreement, is a party to the non-compete agreement that is the subject of this action. The critical inquiry however is whether the Michigan corporation's absence may subject Defendant to double or otherwise inconsistent obligations. Plaintiff avers that Defendant will not be subject to inconsistent obligations because the Michigan corporation "has no right to later bring suit against [Defendant] for competition against" the Wisconsin corporation. However, Plaintiff ignores the fact that both corporations are a party to the same agreement with Defendant, and that the Michigan corporation would have the right to enforce against Defendant the same provisions that the Wisconsin corporation is seeking to enforce in this action. Indeed, Plaintiff is unequivocal in its belief that the Michigan corporation has "rights that arise out of the same contract" and that it may enforce those rights against Defendant. *See, e.g., PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 201 (6th Cir.2001), *reh'g denied,* No. 01–3228, 2002 U.S.App.

LEXIS 3483 (Feb. 18, 2002) (finding non-diverse absent party necessary under Rule 19(a)(2)(ii) because it was a party to contract at issue and the federal court wanted to avoid state court construing same contract in action by absent party); *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.,* 181 F.3d 759, 764 (6th Cir.1999) (finding future legal action by the absent non-diverse party against a party to the action was not speculative inasmuch as the absent party was also a party to the contract at issue and was therefore necessary under Rule 19(a)).

Plaintiff's attempt to distinguish the legal position of the two corporate entities under the same agreement is belied by the already substantial connection between the Michigan and Wisconsin entities, and Defendant's connection with both. *See* discussion *supra* Part IV.A. Given the contacts between all three parties in this very early stage of litigation, it seems unlikely that any tribunal could totally ignore the Michigan corporation in adjudicating the validity of the agreement as it pertains to Defendant.

Further, the non-diverse Michigan corporation would be required to bring its lawsuit in state court, which would be required to interpret the agreement under Michigan law, just as this Court must do if it retains jurisdiction over this matter. This would create the unenviable result of a federal and state tribunal construing the same agreement. *See Cohen,* 276 F.3d at 201; *MRF Ltd., Inc.,* 181 F.3d at 764. Because the Michigan corporation has an interest in the same agreement against the same individual as the Wisconsin corporation, coupled with Plaintiff's indication that the Michigan corporation may enforce those rights against Defendant, who worked in Michigan and had significant contacts with the Michigan corporation, the Court finds that the Michigan corpora-

tion's absence may leave Defendant subject to multiple and possibly inconsistent obligations from two different tribunals.

Because joining the Michigan corporation in this action as a necessary party would destroy this Court's subject matter jurisdiction, the Court must determine whether in equity and good conscience this action should nonetheless proceed, or be dismissed on a finding that the absent party is indispensable. *See, e.g., Cohen,* 276 F.3d at 202; 4 MOORE's FEDERAL PRACTICE ¶ 19.05[1][a] (3d ed.2000).

### 2. Indispensability of the Michigan corporation to this action

■ If joining a necessary party under Rule 19(a) will destroy diversity jurisdiction, the Court's task under Rule 19(b) is to determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." FED. R. CIV. P. 19(b). Rule 19(b) lists four factors to guide the Court in determining whether a necessary party is also indispensable:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED. R. CIV. P. 19(b). "The factors are not arranged in a hierarchical order, and no factor is determinative or necessarily more important than the other. The four factors are not exclusive." 4 MOORE's FEDERAL PRACTICE ¶ 19.05[1][a] (3d ed.2000). Further, "the major focus is equity and

good conscience, which permits the court to consider all circumstances bearing on the fairness or advisability of choosing one course over the other." *Id.* Finally, Rule 19(b) "is to be applied on a case by case basis." *MRF Ltd., Inc.,* 181 F.3d at 765.

It is important to note at the outset that " 'precedent supports the proposition that a contracting party is the paradigm of an indispensable party.' " *National Union Fire Ins. Co. v. Rite Aid,* 210 F.3d 246, 252 (4th Cir.2000) (quoting *Travelers Indem. Co. v. Household Int'l, Inc.,* 775 F.Supp. 518, 527 (D.Conn.1991)); *see also* 4 MOORE's FEDERAL PRACTICE ¶ 19.06[4] (3d ed.2000); *see also* 4 MOORE's FEDERAL PRACTICE ¶ 19.06[3] (3d ed.2000) (noting that courts often "dismiss rather than proceed without co-obligees" under a contract whose joinder is not feasible); *Fredstrom v. Giroux Post No. 11 et al.,* 94 F.Supp. 983, 985 (W.D.Mich.1951) (finding co-obligors under a contract indispensable under Rule 19); *Schram v. Perkins et al.,* 38 F.Supp. 404, 407 (E.D.Mich.1941) (same).

Regarding the first factor in the Rule 19(b) analysis, the Court finds that both Defendant and the Michigan corporation might be prejudiced if the Court renders a judgment in this matter without joining the Michigan corporation. Defendant has been unequivocal about his intent to delve into the "alter ego" theory and "reverse pierce the corporate veil" to involve the Michigan corporation in this action. Although Defendant made this assertion under the guise of a jurisdictional argument, the Sixth Circuit takes the position that an analysis into the separateness of a parent and subsidiary corporation is the same whether for jurisdictional purposes or adjudicating the merits of a corporate legal issue. *See Schwartz v. Electronic Data Sys.,* 913 F.2d 279 (6th Cir.1990). Therefore, it is likely that a tribunal adjudicating the issue of whether Defendant is bound

by the agreement will have to sort through the Michigan corporate filings in order to address Defendant's position that the corporations were not separate entities. If indeed the Michigan corporation is a separate legal entity, it may have legal concerns distinct from those of the Wisconsin corporation under the agreement.

Further, because this factor addresses the same concerns as Rule 19(a)(2), *see Rite Aid*, 210 F.3d at 252, the Court notes the real possibility that Defendant will be subject to separate and possibly inconsistent obligations under the agreement should the non-diverse Michigan corporation pursue enforcement of the agreement in state court. *See* discussion *supra* Part IV.B.1. Indeed, paragraph 2(b)(i) of the agreement prohibits Defendant from working in the waste management business "within sixty-five ... miles of any location which duties were assigned to [him] or for which [he] was responsible during the last two ... years of [his] employment." Further, the agreement indicates that its prohibitions apply to the Wisconsin corporation "and all of its subsidiaries." Therefore, it is quite possible that the Michigan corporation could assert that, on the preliminary facts of this case, Defendant violated this clause as it applies to it because Defendant worked in Michigan, was paid by the Michigan corporation, received W–2's containing the Michigan corporation's federal employee identification number, and worked out of the Michigan corporation's principal place of business. The Michigan corporation's argument would only be buttressed by the fact that the Wisconsin corporation did not obtain a certificate to conduct business in Michigan as a foreign corporation until March 2002, months after Defendant resigned his post with Plaintiff.

Further, paragraph 2(b)(ii) of the agreement prohibits Defendant from contacting or soliciting "any of Onyx Group's custom-ers for the purpose of providing services that are substantially similar to the services or business of the Onyx Group." Again, because the agreement defines "Onyx Group" to include "all of its subsidiaries," it is not difficult to foresee how simple it would be for the Michigan corporation to bind Defendant, a Michigan resident, to the terms of the agreement on the facts of this case. Indeed, the agreement contains many provisions that arguably involve the Michigan corporation on the facts presented to the Court.

Regarding the second factor, it would be difficult for this Court to fashion a judgment on the facts of this case that would lessen or avoid prejudice to either Defendant or the Michigan corporation. In short, it is difficult to conceive how this Court can adjudicate the rights of the Wisconsin corporation under the agreement without considering Defendant's arguments regarding the Michigan corporation.

Regarding the third factor, the Court finds that a judgment in the Michigan corporation's absence will be inadequate because Defendant's response to Plaintiff's Motion for a Preliminary Injunction asserts that the terms of the agreement are "unreasonable as to duration, geographic area and/or the type of employment and line of business purportedly prohibited." This and other arguments asserted by Defendant may require consideration of Defendant's contacts with the Michigan corporation and how its potential rights against Defendant make the agreement unreasonable. On the other hand, should the Court proceed without the Michigan corporation and interpret the agreement, the Michigan corporation could proceed in state court and receive an interpretation inconsistent with that of this Court. Therefore, "resolving the entire controversy in [state] court will promote 'the public interest in avoiding piecemeal and ineffi-

cient litigation.'" *Rite Aid,* 210 F.3d at 253 (quoting *Acton Co. v. Bachman Foods, Inc.,* 668 F.2d 76, 81 (1st Cir.1982)) (citing this rationale as dispositive in addressing the third factor of Rule 19(b)).

Regarding the fourth factor, it is apparent that Plaintiff will have an adequate remedy in state court. *See, e.g., Rite Aid,* 210 F.3d at 253; *Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 560 (5th Cir.1985) ("[C]ourts have not hesitated to dismiss cases in which a non-diverse subsidiary has been found an indispensable party, especially when plaintiffs have an alternative forum in state courts.")

Further, the Court finds that "in equity and good conscience," principles of limited federal jurisdiction and judicial economy dictate dismissing this action rather than proceeding without the non-diverse Michigan corporation. Should the Court proceed through discovery and a possible trial without the Michigan corporation, despite the already significant contacts between Defendant and the Michigan corporation and Defendant's expressed intent to investigate those contacts further as discovery proceeds, the Court runs the very real risk of having all of its efforts reversed on appeal. *See, e.g., Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.,* 181 F.3d 759 (6th Cir.1999) (reversing and remanding a case post-trial because district court failed to join an indispensable party).

Therefore, the Court finds that the non-diverse Michigan corporation is a necessary and indispensable party to this action pursuant to FED. R. CIV. P. 19. Because the Michigan corporation is indispensable and its joinder will destroy the Court's subject matter jurisdiction, this action must be dismissed.

## IV. CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is GRANTED. It is FURTHER ORDERED that this Court's March 19, 2002 temporary restraining order is HEREBY SET ASIDE, and that this matter is DISMISSED WITHOUT PREJUDICE pursuant to FED. R. CIV. P. 12(b)(7).

IT IS SO ORDERED.