644 S.E.2d 772

**Kevin GISSEL and Christina Gissel (formerly Christina Eckley), Respondents,**

v.

**Charles HART and Gene Hart, Appellants.**

**Wade A. McEachern, Respondent,**

v.

**Charles Hart and Gene Hart, Appellants.**

**No. 4224.**
**Case Nos. 2003–CP–10–02195, 2003–CP–10–02703.**

Court of Appeals of South Carolina.

Heard March 7, 2007.
Decided March 26, 2007.
Rehearing Denied May 17, 2007.

282

Steven L. Smith, of Charleston, for Appellants.

Donald Higgins Howe and Walter Bilbro, Jr., both of Charleston, for Respondents.

GOOLSBY, J.:

Charles Hart and Gene Hart (the Harts) appeal from an order of the circuit court upholding arbitration awards in favor of Kevin and Christina Gissel (the Gissels) and Wade A. McEachern. We vacate in part and affirm in part.

## FACTS

In 2000, the Gissels purchased a mobile home for the stated cash price of $73,919.34 from Homes America, Inc. Around the same time, McEachern purchased a mobile home for a stated cash price of $76,855.00 from Homes America. The sales contracts for each of these two transactions listed Homes America as the "DEALER" and were signed as "Approved" by Gene Hart. The contracts each contained an identical Notice of Arbitration Provision.[1] Homes America subsequently merged into Southern Showcase Housing, Inc.

In 2003, the Gissels and McEachern initiated separate actions against "Homes America, Inc., Southern Showcase Housing, Inc., Charles Hart, Gene Hart and Amery English," alleging claims for (1) negligence, (2) fraud, and (3) breach of contract with fraudulent intent. The amended complaints asserted claims against "the Defendants, jointly, severally and in the alternative" and sought "both actual and punitive damages on each of the above causes of action in an amount to be determined by a jury, together with the cost of this action." The complaints essentially asserted the mobile homes were improperly installed and contained a number of defects.

Southern Showcase Housing filed separate Motions to Dismiss against the Gissels and McEachern in August 2003. In September 2003, the Harts also filed Motions to Dismiss separately against the Gissels and McEachern. The motions filed by the Harts were virtually identical to those filed by Southern Showcase Housing and asserted the complaints should be dismissed with prejudice and the matters referred

---

1. The following notice appeared in bold typeface in the contracts— "NOTICE OF ARBITRATION PROVISION: THIS CONTRACT CONTAINS A BINDING AGREEMENT TO ARBITRATE ALL CLAIMS, DISPUTES AND CONTROVERSIES ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT."

to arbitration under the Federal Arbitration Act (FAA)[2] "as required in the contract by and between the parties." The same attorney represented both Southern Showcase Housing and the Harts.

The circuit court construed the motions as being to stay litigation and compel arbitration. The court issued two orders granting the motions, one with the Gissels as the plaintiffs, and the other with McEachern as the named plaintiff. In each order, the court stated, *"This litigation* is hereby stayed, and *the parties* are ordered to arbitrate this matter pursuant to the [FAA]...." (Emphasis added.) The captions in both orders identified the defendants Southern Showcase Housing, the Harts, and Amery English as *parties*.[3]

At the arbitration hearing, the Harts made an appearance through counsel, who presented evidence on their behalf. According to the Harts, "Defendants Homes America, Inc., Gene Hart and Charles Hart only offered one witness, David Bennett, administrator of the South Carolina Manufactured

---

2. 9 U.S.C.A. §§ 1 to –16 (West 1999 & Supp.2006). *See generally Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (citing the sections constituting the FAA). The FAA applies to maritime transactions and to transactions involving interstate commerce. 9 U.S.C.A. § 1 (West 1999). The orders compelling arbitration note the transactions at issue here involved interstate commerce because the Gissels and McEachern are residents of South Carolina, Southern Showcase Housing is a North Carolina corporation, and the homes were manufactured by a Delaware corporation that was not named in the suits. In this case, it is not questioned that the transactions involved interstate commerce, and the applicability of the federal act has been established as the law of the case. *See Trident Technical College v. Lucas & Stubbs, Ltd.,* 286 S.C. 98, 104 n. 2, 333 S.E.2d 781, 785 n. 2 (1985).

3. The orders of reference in this case state the litigation is being referred pursuant to the motions of Southern Showcase Housing without specifically noting the Harts had also moved for the matters to be arbitrated. During the oral argument for this appeal, counsel for all parties agreed that the orders referred both the Gissels' case and McEachern's case to arbitration in their entirety and encompassed the claims against the corporation and the Harts. Indeed, this is the only reasonable interpretation in light of the fact that the motions of Southern Showcase Housing and the Harts asked for identical relief, i.e., arbitration, and they received the relief they asked for. The failure of the order to note the Harts had made identical motions on this point was, at most, the result of a clerical mistake.

Housing Board.... Basically, Mr. Bennett testified the damages alleged in the Plaintiffs' Amended Complaint were the financial responsibility of Defendant Homes America, Inc."

During the course of the arbitration proceedings, Southern Showcase Housing settled with the Gissels and McEachern; however, the Harts were not included in the settlement and became the only remaining defendants.[4]

The arbitrator thereafter issued decisions awarding both actual and punitive damages to the Gissels and McEachern.[5] The arbitrator awarded the Gissels $55,000.00 in "actual, consequential and incidental damages" against the Harts "jointly and severally," $45,000.00 in punitive damages against Charles Hart "individually," and $45,000.00 in punitive damages against Gene Hart "individually." In a separate ruling, the arbitrator awarded McEachern $53,000.00 in actual damages against the Harts "jointly and severally," $45,000.00 in punitive damages against Charles Hart "individually," and $45,000.00 in punitive damages against Gene Hart "individually."

The Harts appealed to the circuit court, which upheld the arbitrator's awards. This appeal followed.

## LAW/ANALYSIS

The Harts contend the decision of the arbitrator should be vacated because the arbitrator exceeded his powers in entering awards against them individually and his decision constituted a manifest disregard of the law.

"The policy of the United States and South Carolina is to favor arbitration of disputes."[6] "In order to advance the

---

4. Amery English did not appear at the hearing on the motions to compel arbitration, was not mentioned in the arbitration awards, and is not a party to this appeal.

5. Since Southern Showcase Housing had settled with the plaintiffs, it was not a named party in the awards and the Harts were the only named defendants.

6. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001).

underlying purposes of arbitration, the scope of judicial review is necessarily restricted." [7]

Section 10(a) of the FAA provides that an arbitration award may be *vacated*[8] on four statutory grounds:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) *where the arbitrators exceeded their powers*, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[9]

■ The Harts acknowledge there was no fraud, partiality, or corruption in this case, but contend the arbitrator exceeded his powers. "Arbitrators exceed their powers within the meaning of § 10(a)(4) of the FAA where their award resolves an issue that is not arbitrable because it is outside the scope of the arbitration agreement." [10]

■ The Harts also contend the award constitutes a manifest disregard of the law. "An arbitrator's award may be

---

7. Trident Technical College, 286 S.C. at 105, 333 S.E.2d at 785.

8. Section 11 of the FAA provides that an arbitration award may be *modified* on three other grounds:

   (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

   (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

   (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

   9 U.S.C.A. § 11(a)-(c) (1999); *see also Trident Technical College*, 286 S.C. at 105 n. 3, 333 S.E.2d at 786 n. 3.

9. 9 U.S.C.A. § 10(a)(1)-(4) (West Supp.2006) (emphasis added).

10. *Lybrand v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 321 S.C. 70, 73, 467 S.E.2d 745, 747 (Ct.App.1996).

vacated where there has been a 'manifest disregard or perverse misconstruction of the law.'"[11] "However, this non-statutory ground requires something more than a mere error of law, or failure on the part of the arbitrator to understand or apply the law."[12] It presupposes something beyond a mere error in construing or applying the law and even a clearly erroneous interpretation of the contract cannot be disturbed.[13]

At the hearing before the circuit court, the Harts contended the arbitrator exceeded his powers by awarding damages against them "individually" and the awards constituted a manifest disregard of the law. The Harts asserted the amended complaints stated that "at all times herein mentioned" the Harts were "acting as agents, servants, and employees."[14] They further asserted the complaints contained no factual allegations of any wrongdoing by them in their *individual* capacities. The circuit court, in colloquy from the bench, noted that, "You've got to give some credence to the fact that they are named separately and that they are referred to collectively as defendants." The circuit court ruled from the bench that the arbitrator's awards should be upheld, and subsequently issued a short form order summarily denying the motion to vacate the awards.

On appeal, the Harts argue that the award of damages, both actual and punitive, against them should be vacated because they were not sued in their individual capacities. The Harts assert: "The arbitrator's decision contains no specific findings of fact or conclusions of law. It is therefore impossible to actually pinpoint the basis for his conclusion that each of the individuals named as Defendants in this case [is] liable for ... actual damages and ... punitive damages. This decision

---

11. *Lauro v. Visnapuu*, 351 S.C. 507, 519, 570 S.E.2d 551, 557 (Ct.App. 2002) (quoting *Batten v. Howell*, 300 S.C. 545, 548, 389 S.E.2d 170, 172 (Ct.App.1990)).

12. *Id.*

13. *Trident Technical College*, 286 S.C. at 108–09, 333 S.E.2d at 787.

14. The complaints alleged as to the Harts: "That Defendants Charles Hart and Gene Hart are residents and citizens of the County of Berkeley, State of South Carolina, who, at all times mentioned herein[,] were the agents, servants, and employees of Homes America, Inc."

is clearly beyond both the arbitrator's authority and power, and made with manifest disregard for the law."

"The character in which one is made a party to a suit must be determined from the allegations of the pleadings, and not from the title alone." [15] "Where the allegations of the complaint indicate with reasonable certainty that a plaintiff sues, or a defendant is sued, in a representative capacity, although not specifically stated, this is sufficient to fix the character of the suit." [16] "Where it is doubtful in what capacity a party sues or is sued, the entire complaint must be examined to determine the question, and reference may also be had to the pleadings as a whole or to the entire record." [17]

"If the complaint is unclear on this issue [of whether a defendant is being sued in an official or representative capacity or whether the defendant is being sued in an individual capacity], . . . courts will look to the caption of the case, the allegations of the complaint, and the prayer for relief to ascertain the capacity in which the defendant has been sued." [18]

"[T]he statement of capacity in the caption, the allegations, and the prayer for relief allow defendants to have an opportunity to prepare for a proper defense and eliminate the unnecessary litigation that arises when parties fail to specify the capacity." [19] "In the absence of a clear statement of [a] defendant's capacity, a plaintiff is deemed to have sued a defendant in his official capacity." [20]

We agree with the Harts that the complaints did not clearly assert claims against them in their individual capacities. The fact that they were listed as defendants in the captions of the

---

15.   67A C.J.S. *Parties* § 173, at 722 (2002).

16.   *Id.*

17.   *Id.* (footnotes omitted).

18.   *Urquhart v. Univ. Health Sys. of E. Carolina, Inc.,* 151 N.C.App. 590, 566 S.E.2d 143, 145 (2002).

19.   *Paquette v. County of Durham,* 155 N.C.App. 415, 573 S.E.2d 715, 719 (2002).

20.   *Id.*

complaints is not determinative of what capacity they were being sued in, and even the captions did not expressly state that they were each being sued in an individual, as opposed to representative, capacity. In addition, the factual allegations in the body of the complaints specifically alleged the Harts were acting "at all times" as agents and employees of the defendant corporation, Homes America, Inc. None of the allegations stated the Harts committed any acts in their individual capacities or that relief was sought against them other than as agents and employees of the corporation.[21] We note that an allegation of joint and several liability is a distinct concept that refers to the allocation of any damages award, not to whether the defendants are sued in a representative or individual capacity.[22] Moreover, in the request for relief, the complaints essentially sought one recovery against all of the defendants on the various causes of action.[23]

■■■■ In this case, the contracts signed by the Gissels and McEachern were with Homes America (now Southern Show-

---

**21.** See 59 Am.Jur.2d Parties § 16, at 422 (2002) ("Persons suing or being sued in their official or representative capacity are, in contemplation of law, distinct persons and strangers to any rights or liabilities as individuals.").

**22.** See 23 Words and Phrases Joint Liability 164 (1967) ("The main attribute of a 'joint liability', as distinguished from a 'severable liability' or a 'joint and several liability', is the right of one joint obligor to insist that his co-obligor be joined as a codefendant with him, that is, that they be sued jointly." (referencing Schram v. Perkins, 38 F.Supp. 404 (D.Mich.1941))); id. Joint and Several Liability 49 (Supp. 2006) (defining "joint and several liability" as "a collection mechanism" (referencing EMC Ins. Cos. v. Dvorak, 603 N.W.2d 350 (Minn.Ct.App.1999))); see also Collins v. Bisson Moving & Storage, Inc., 332 S.C. 290, 306, 504 S.E.2d 347, 356 (Ct.App.1998) (stating "[j]oint and several liability arises only when two or more tortfeasors are responsible for a single injury").

**23.** Cf. Mullis v. Sechrest, 347 N.C. 548, 495 S.E.2d 721, 723–25 (1998) (stating the pleadings should clearly indicate in the caption the capacity in which the plaintiff intends to hold a defendant liable, and it should be further indicated in the allegations of the complaint and in the prayer for relief; the court observed that in the absence of such a clear statement, there is a presumption against imposing individual liability; the court noted the fact that there was only one claim for relief against the defendants was indicative of an intent to sue one of the listed defendants in an official capacity as an agent rather than in an individual capacity).

case Housing). The contracts were each in the name of the corporation Homes America, which was listed as "DEALER," and signed "By" Gene Hart as a signatory for the corporation. Gene Hart was not listed as signing in an individual capacity on the contract. Additionally, Customer Pre–Delivery and Set–Up Agreements were signed "BY MANAGER" Gene Hart indicating he was signing on behalf of Homes America. Charles Hart was not a signatory to any of the contracts. Thus, there was no basis on which to predicate an award of individual liability.[24]

Based on the foregoing, we vacate the portions of the arbitrator's awards that purport to impose liability "individually" on the Harts for punitive damages and, if the awards can be read to impose liability "individually" on the Harts for actual damages, for actual damages as well. We affirm the awards, however, to the extent that they impose actual damages against the Harts in their representative capacities as agents, servants, and employees of Homes America, the capacities in which they were sued.

---

24. *Cf. McKagen v. Windham,* 59 S.C. 434, 38 S.E. 2 (1901) (reversing a judgment in favor of the plaintiff who was suing the members of a county board of control on a contract for wages, where the complaint did not allege that the defendants intended to bind themselves personally on the contract, nor did the plaintiff allege facts from which such an inference could be drawn; it is presumed that the members did not intend to bind themselves personally to a contract made by them on behalf of the county). Courts must look to the entire complaint to ascertain the capacity in which a defendant is sued. *See, e.g., Johnson v. York,* 134 N.C.App. 332, 517 S.E.2d 670, 672–73 (1999) (holding, where the plaintiff's complaint contained no clear statement in the caption, the allegations, or the prayer for relief that the defendants were being sued in their individual capacities, the court would treat the complaint as a suit against the defendants solely in their official capacities; the plaintiff had alleged the two defendants were employees of the Department of Corrections and one was the plaintiff's colleague and the other an area administrator); *Warren v. Guilford County,* 129 N.C.App. 836, 500 S.E.2d 470, 471–72 (1998) (treating the complaint as being against the defendant Ann Kelk in her official capacity where "neither the caption, the allegations, nor the prayer for relief contains any reference as to whether Kelk is being sued in her official or individual capacity"; the plaintiff alleged Kelk "was an agent and employee of the Defendant Guilford Mental Health" and operating "as an agent and employee" and sought judgment against the defendants "jointly and severally").

■ VACATED IN PART, AFFIRMED IN PART.[25]

HEARN, C.J., and STILWELL, J., concur.

---

25. The Harts additionally argue on appeal that (1) the award of punitive damages is outside the scope of the arbitration agreement because the "contract expressly bars the consideration of damages in excess of those determined to have been the actual damage caused by the seller's failure to repair the mobile home," and (2) the award of punitive damages evidences a manifest disregard of the law because there was no examination of the Harts individually, there was no individual allegations asserted against them, and there was no testimony regarding the individual liability of the Harts. These issues, however, were not preserved for appeal as they were not argued below. *See Murphy v. Hagan,* 275 S.C. 334, 339, 271 S.E.2d 311, 313 (1980) ("The remaining issues were either not raised below and therefore may not be raised on review or were not properly preserved by timely exception and therefore may not be heard on appeal.").