22350

TRIDENT TECHNICAL COLLEGE, Respondent, v. LUCAS & STUBBS, LTD. and George A. Creed & Son, Inc., Defendants, of whom Lucas & Stubbs, Ltd. is also a Respondent, and George A. Creed & Son, Inc., is Appellant. Appeal of GEORGE A. CREED & SON, INC.

(333 S. E. (2d) 781)

Supreme Court

*T. Alexander Beard,* of *Cooper, Bowen, Beard & Smoot,* Camden, *for appellant.*

*W. H. Bundy, Jr.,* of *Howe & Bundy;* and *A. Arthur Rosenblum,* Charleston; and *Asst. Attys. Gen. Victor S. Evans, Judith Evans Finuf* and *Grady L. Patterson, III,* Columbia, *for respondent Trident Technical College.*

*Claron A. Robertson, III,* of *Buist, Moore, Smythe & McGee,* Charleston, *for respondent Lucas & Stubbs, Ltd.*

Heard June 6, 1985.

Decided July 8, 1985.

*Per Curiam:*

This is an appeal from an arbitration award. We affirm and adopt the trial court's Order, as amended.

## I. INTRODUCTION

This matter is before the Court upon the motion of respondents Trident Technical College (TTC) and Lucas & Stubbs (L & S) to confirm an arbitration award. Appellant George A. Creed & Son, Inc. (Creed) has opposed the motions with a motion to vacate the arbitrator's award.

## II. FINDINGS OF FACT

On August 31, 1977 TTC entered into a negotiated contract with L & S to design and supervise the construction of a new campus on the Ashley River in Charleston, South Carolina. On August 26, 1978, TTC entered into a standard form AIA contract with Creed to construct the campus pursuant to the plans and specifications of L & S for approximately $3,200,000.00. The contract called for substantial completion of the building to occur in early April 1980. Both of the contracts required all disputes to be resolved by arbitration, with such arbitration to be conducted by the American Arbitration Association. The project was plagued by numerous problems from its inception and, finally, in April of 1980, L & S certified to TTC that reasonable cause existed to terminate Creed's contract; this was done by the owner in a letter dated April 11, 1980.

On April 21, 1980 Creed demanded arbitration pursuant to the contract, claiming damages in an amount that was later set by Creed at $2,051,933.77. TTC refused to arbitrate and on April 30, 1980, Creed petitioned this Court to compel TTC to arbitrate under the Federal Arbitration Act, 9 U.S.C. §§ 1-14. On May 20, 1980 a hearing was held before the Honorable Walter J. Bristow, Jr., who issued an order finding that the federal act was applicable and requiring TTC to arbitrate. No appeal was perfected from that order.

On July 16, 1980 TTC filed a demand for arbitration with L & S and also filed a petition to consolidate the arbitration between Creed and TTC and between TTC and L & S into a single proceeding. On September 4, 1980, the Honorable Richard E. Fields issued an order requiring that the entire matter be consolidated as requested.

Thereafter, on December 11, 1980 a pretrial conference was held between the parties, in the presence of the arbitrators, at which time discovery procedures and other

issues were discussed. Also during that pretrial conference, the parties were instructed by the arbitrators to submit detailed outlines of their claims against each other, so that the parties would be better informed concerning the issues to be arbitrated.

The arbitration hearings commenced on March 9, 1981 before three arbitrators selected by the American Arbitration Association; this panel consisted of a lawyer, a general contractor, and an architect, all residing in the State of North Carolina as requested by Creed. Over the course of the next eleven months, the arbitration eventually totalled forty-one separate days of proceedings, which were transcribed for the record along with the numerous exhibits introduced by the parties. The total expense to the parties for the arbitration process itself, including arbitration expenses, administration, and arbitrators' compensation, was $165,711.19. Of course, this figure does not include the substantial expenses borne by the parties for attorneys' fees, expert witness fees, and other costs. On April 19, 1980 the arbitrators rendered their award of $562,697.68 total damages to TTC, $434,837.88 from Creed and $127,859.80 from L & S. Immediately thereafter, L & S tendered its payment in full to TTC.

## III. CONCLUSIONS OF LAW

### A. Applicable Law

The Federal Arbitration Act, 9 U.S.C. §§ 1-14 evidences the well-established federal policy favoring the arbitration of disputes. *See J.S. & H. Constr. Co. v. Richmond County Hosp. Auth.*, 473 F. (2d) 212 (5th Cir. 1973); *Corbin v. Washington Fire & Marine Ins. Co.*, 278 F. Supp. 393 (D.S.C. 1968), *aff'd* 398 F. (2d) 543 (4th Cir. 1968).

While this policy favoring the arbitration of disputes is also well established in South Carolina, both in its statutory, S. C. Code Ann. § 15-47-10 (1976),[1] and deci-

---

[1] The current statutory law of South Carolina concerning arbitration is the Uniform Arbitration Act, S. C. Code Ann. §§ 15-48-10 — 15-48-240 (Cum. Supp. 1984), which repealed the previous statutory provisions, §§ 15-47-10 — 15-47-50 (1976); however, the Uniform Arbitration Act cannot be applied retroactively, § 15-48-210 (Cum. Supp. 1984), and is therefore inapplicable to contracts entered into before May 8, 1978.

sional law, *Harwell v. Home Mutual Fire Ins. Co.*, 228 S. C. 594, 91 S. E. (2d) 273 (1956); *Bollmann v. Bollmann*, 6 S. C. 29 (1874), this state law is supplanted by federal substantive law with respect to disputes to which the Federal Arbitration Act is applicable.[2] *See In re Mercury Constr. Corp.* 656 F. (2d) 933 (4th Cir. 1981); *Episcopal Housing Corp. v. Federal Ins. Co.*, 269 S. C. 631, 239 S. E. (2d) 647 (1977).

> [W]e are here dealing not with state-created rights, but with rights arising out of the exercise by the Congress of its constitutional power to regulate commerce and hence there is involved no difficult question of constitutional law under *Erie Railroad Co. v. Tompkins*, 304 U. S. 64 [58 S. Ct. 817, 82 L.Ed. 1188] (1938).

*Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F. (2d) 402, 404-405 (2d Cir. 1959). Thus, the Federal Arbitration Act "is a declaration of national law equally applicable in state or federal court." *Id.* at 407.

### B. Federal Arbitration Act

#### 1. Generally

As previously indicated, the Federal Arbitration Act, 9 U.S.C. §§ 1-14, is intended to advance the "federal policy in favor of arbitration of disputes." *Bruno v. Pepperidge Farm, Inc.*, 256 F. Supp. 865, 867 (D. Pa. 1966). The fundamental premise upon which this policy is grounded is the laudable goal of providing "a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings." *Diapulse Corp. of America v. Carba Ltd.*, 626 F. (2d) 1108, 1110 (2d Cir. 1980). Moreover, the Act also serves to "help ease congested court dockets." *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 693 (D.N.Y. 1966). As succinctly stated by the court in *Farris v. Alaska Airlines, Inc.*, 113 F. Supp. 907, 908 (D. Wash. 1953): "The primary

---

[2] Generally speaking, the Federal Arbitration Act is applicable to maritime transactions and transactions involving "commerce among the several States...." 9 U.S.C. § 1. *See* § 2. In the present case, which unquestionably involves interstate commerce, the applicability of the federal act has been established as the law of the case.

function of arbitration is to serve as a substitute for and not a prelude to litigation."

In order to advance the underlying purposes of arbitration, the scope of judicial review is necessarily restricted. *See* 9 U.S.C. §§ 9-11. "[T]he court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated. . . ." *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.,* 274 F. (2d) 805, 808 (2d Cir. 1960), *cert. denied,* 363 U. S. 843, 80 S. Ct. 1612, 4 L. Ed. (2d) 1727 (1960). Indeed, "[b]road judicial review on the merits would render resort to arbitration wasteful and superfluous. . . ." *Farris v. Alaska Airlines, Inc., supra* at 908. Consequently, a court "may vacate or modify an arbitration award only if one of the grounds specified in 9 U.S.C. §§ 10 and 11 is found to exist." *Diapulse Corp. of America v. Carba, Ltd., supra* at 1110.

### 2. Grounds for Vacating Award

Section 10 of the Federal Arbitration Act provides that an arbitration award may be vacated[3] on four grounds:

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause

---

[3] Section 11 of the Act provides that an arbitration award can be *modified* on three other grounds:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of controversy. 9 U.S.C. § 11(a)-(c). However, Creed has moved only to vacate the award, and, therefore, even assuming *arguendo* the factual relevance of § 11, the award cannot be modified. *Petrol Corp. v. Groupement D'Achat Des Carburants,* 84 F. Supp. 446 (D.N.Y. 1949).

shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced. (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)-(d). These grounds must be construed in light of the rule that the Court's function in vacating, or confirming, an arbitration award is severely limited. *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 261 F. Supp. 832 (D.N.J. 1966), *aff'd* 397 F. (2d) 594 (3d Cir. 1968), *cert. denied,* 393 U. S. 954, 89 S. Ct. 378, 21 L. Ed (2d) 365 (1968).

In its motion, Creed asserts that the arbitration award here should

be vacated on the grounds that (i) the arbitrators exceeded their powers; (ii) the award was procured by undue means by virtue of the manifest disregard of the law and facts; (iii) the arbiters refused to hear evidence/law material to the controversy; and (iv) the arbiters otherwise so conducted the hearings as to prejudice substantially the rights of George A. Creed & Son, Inc.

(a) Scope of arbiters' authority

Appellant's first ground tracks the language of 9 U.S.C. § 10(d), but reliance on that subsection is misplaced. The question of whether the arbitrators exceeded their power relates to the arbitrability of the underlying dispute. *See, e.g., United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U. S. 593, S. Ct. 1358, 4 L. Ed. (2d) 1424 (1960). An arbitrator exceeds his powers and authority when he attempts to resolve an issue that is not arbitrable because it is outside the scope of the arbitration agreement. *Id.* Conversely, if the issues presented to the arbitrators are within the scope of the arbitration agreement, subsection (d) does not require the court to "review the merits of every construction of the contract." *Id.* at 598-99, 80 S. Ct. at 1361-62.

In the present case, the issues presented to the arbitration panel consisted solely of the claims between the parties regarding the design and construction of the TTC Ashley River Campus; it is beyond dispute that these issues are within the scope of the arbitration clauses in the contracts between L & S and TTC and between TTC and Creed and, therefore, these issues are arbitrable. Indeed, the arbitration of these issues was commenced by Creed's demand for arbitration, and it has vigorously and repeatedly maintained that the issues were arbitrable. The courts have

> consistently accorded the narrowest of readings to the Arbitration Act's authorization to vacate awards "[w]hen the arbitrators exceeded their powers," 9 U.S.C. § 10(d), especially where that language has been invoked in the context of the arbitrators' alleged failure to correctly decide a question which all concede to have been properly submitted in the first instance.

*In the Matter of Andros Compania Maritima, S.A. and Marc Rich & Co., A.G.,* 579 F. (2d) 691, 703 (2d Cir. 1978).

Clearly, Creed is attempting to relitigate the merits of the arbitration panel's resolution of concededly arbitrable issues under the guise of questioning the panel's power and authority; this is not proper. *Amoco Oil Co. v. Oil, Chem. & Atomic Workers Internat. Union,* 548 F. (2d) 1288 (7th Cir. 1977), *cert. denied,* 431 U. S. 905 (1977). Even assuming *arguendo* that the award misconstrued the contracts, this would not constitute an abuse of the arbitrators' power under 9 U.S.C. § 10(d). *National Railroad Passenger Corp. v. Chesapeake & O. Ry. Co.,* 551 F. (2d) 136 (7th Cir. 1977).

### (b) Manifest disregard of the law

Appellant's second ground that "the award was procured by undue means by virtue of the parties' manifest disregard of the law and facts" apparently stems from language borrowed from both 9 U.S.C. § 10(a) and decisional law under § 10(d). *See e.g., Wilko v. Swan,* 346 U. S. 427, 436-37, 74 S. Ct. 182, 187-88, 98 L. Ed. 168 (1953) (arbitrators may exceed their powers if their award reflects a "manifest disregard" of the law).

To the extent that this ground is predicated on 9 U.S.C. § 10(a), it is without merit. The phrase "corruption, fraud, or undue means" has been construed by the court to proscribe affirmative misconduct by the parties, such as perjury or subornation of perjury. *See Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., supra; Karppinen v. Karl Kiefer Machine Co.*, 187 F. (2d) 32 (2d Cir. 1951). This subsection does not reach "the parties' manifest disregard of the law and facts," and such an allegation is insufficient to constitute "undue means" under 9 U.S.C. § 10(a) absent a finding of bad faith, fraud, or corruption. *Shearson Hayden Stone, Inc. v. Liang*, 493 F. Supp. 104 (D. Ill. 1980). Moreover, even if appellant was to phrase this objection so as to ostensibly fall within § 10(a), appellant has not discharged its heavy burden to make it "abundantly clear that [the award] was obtained through undue means." *General Constr. Co. v. Hering Realty Co.*, 201 F. Supp. 487, 491 (D.S.C. 1962).

To the extent that this ground is predicated on the decisional law proscribing the arbitrators' manifest disregard of the law, *e.g., Wilko v. Swan*, 346 U. S. 427, 74 S. Ct. 182, 98 L. Ed. 168 (1953), it is also unavailing. First, this case law is directed to the conduct of the arbitrators, not that of the parties. Second, the case law presupposes something beyond a mere error in construing or applying the law. *Raytheon Co. v. Rheem Mfg. Co.*, 322 F. (2d) 173, 183 (9th Cir. 1963); *Gramling v. Food Machinery & Chem. Corp.*, 151 F. Supp. 853 (D.S.C. 1957). Indeed, even a "clearly erroneous interpretation of the contract" cannot be disturbed. *I/S Stavborg v. National Metal Converters, Inc.*, 500 F. (2d) 424, 432 (2d Cir. 1974).

Appellant asserts that the courts have not hesitated in appropriate cases to vacate an arbitration award where there is a manifest disregard or perverse misconstruction of the law. While this is certainly true, those cases have been exceedingly rare, requiring circumstances far more egregious than mere errors in interpreting or applying the law. Indeed, the cases relied upon by appellant all contain the explicit caveat that "the nonstatutory ground of 'manifest disregard' of the law as a basis for vacating arbitration awards ... presuppose[s] 'something beyond and

different from a mere error of law or failure on the part of the arbitrators to understand or apply the law.' " *Drayer v. Krasner*, 572 F. (2d) 348, 352 (2d Cir. 1978), *quoting San Martine Compania de Navegacion, S.A. v. Saguenay Terminals, Ltd.* 293 F. (2d) 796, 801 (9th Cir. 1961). Even assuming *arguendo* that the arbitrators did erroneously apply the law in the various particulars alleged by appellant, these legal errors would be insufficient to constitute manifest disregard of the law under the pertinent cases.

Thus, appellant's assertion that "the award was procured by undue means by virtue of manifest disregard of the law and facts" does not fall within the ambit of 9 U.S.C. § 10(a) or the decisional law proscribing manifest disregard of the law under § 10(d). *See Wilko v. Swan, supra.*

### (c) Refusal to hear evidence

Appellant's third ground is similar to the second, advancing an objection predicated on the arbitrators' reception of evidence and application of the law. As previously discussed, "[t]he award may not be examined for alleged mistakes of law and erroneous evaluation of evidence." *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., supra,* 261 F. Supp. at 835. Refusal to receive evidence can only furnish a basis for vacating an arbitration award when it rises to the level of "misconduct" or "misbehavior" under 9 U.S.C. § 10(c). *Id.* The panel's conduct of the arbitration proceedings was fundamentally fair, and any evidentiary errors or misinterpretations of law do not rise to the level of misconduct. *See, e.g., Fairchild & Co., Inc. v. Richmond, F. & P. R. Co.,* 516 F. Supp. 1305 (D.D.C. 1981). Moreover, as previously discussed, appellant cannot relitigate the arbitrators' construction and application of the law. The courts have "generally refused to second guess an arbitrator's resolution of a contract dispute." *John T. Brady & Co. v. Form-Eze Systems, Inc.,* 623 F. (2d) 261, 264 (2d Cir. 1980).

### (d) Prejudice to party's rights

Appellant's fourth ground, that "the arbiters otherwise so conducted the hearings as to prejudice substantially the rights of George A. Creed & Son, Inc."

is likewise defective. Under 9 U.S.C. § 10(c), an award may be vacated for "arbitrators['] . . . . misbehavior by which the rights of any party have been prejudiced." However, as with "misconduct" under § 10(c), prejudicial misbehavior requires a level of misconduct on the part of the arbitrators that is not present here. *See, e.g., Ballantine Books, Inc., v. Capital Dist. Co.,* 302 F. (2d) 17 (2d Cir. 1962). The touchstone in considering claims of arbitrator misconduct is fairness, *Reichman v. Creative Real Estate Consultants, Inc.,* 476 F. Supp. 1276 (D.N.Y. 1979), and the arbitration proceedings here were unquestionably fair and impartial.

Appellant contends that its rights were prejudiced by the arbitrators' denial of the "opportunity to file briefs on all issues. . . ," and their refusal to hear "oral argument. . . ." Even assuming *arguendo* that this allegation was sufficient to come within the ambit of 9 U.S.C. § 10(c), the allegation is not supported by the record. At the arbitrators' direction, the parties submitted pretrial memoranda concerning all of their claims, and the panel subsequently requested additional briefs on various issues; at no time, however, was any party precluded from filing briefs or memoranda concerning any issues which they felt were pertinent. Moreover, the transcript indicates that considerable oral argument was heard by the panel over the course of forty-one days of proceedings, although the arbitrators did not request closing arguments from counsel. Of course, this is not surprising in light of the availability of the transcript and numerous exhibits, as well as the legal memoranda of the parties, for the panel's review. In any case, absent some showing of unfairness, this court will not re-examine every minute detail concerning the mode and conduct of the arbitration proceedings under 9 U.S.C. § 10(c).

The appellant's contention that it was denied due process by the panel's refusal to hear oral argument or receive briefs is likewise unsupported by the record.

### 3. Confirmation of Arbitration Award

Generally speaking, "[a]n award within the scope of submission is conclusive on fact issues and interpretation of law." *Oinoussian Steamship Corp. v. Sabre Shipping Corp.*, 224 F.Supp. 807, 809 (D.N.Y. 1963) (footnote omitted). The award is presumptively correct, and "[i]t is the general rule that the courts will refuse to review the merits of an arbitration award." *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., supra*, 261 F. Supp. at 835. Otherwise, an arbitration award would signify "the *commencement*, not the end, of litigation." *Id.* (emphasis in original).

Moreover, the arbitrators need not specify their reasoning or the basis of the award. *See, John T. Brady & Co. v. Form-Eze Systems, Inc., supra*, so long as the factual inferences and legal conclusions supporting the award are "barely colorable." *In the Matter of Andros Compania Maritima, S.A. and Marc Rich & Co., A.G., supra*, 579 F. (2d) at 704. "If a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." *Kurt Orban Co. v. Angeles Metal Systems*, 573 F. (2d) 739, 740 (2d Cir. 1978).

The Federal Arbitration Act essentially requires that this Court must "uphold the award unless the challenging party demonstrates one of the infirmities listed in § 10 of the Act." *Maidman v. O'Brien*, 473 F. Supp. 25, 28 (D.N.Y. 1979). The appellant has failed to discharge this burden. Taken in the context of an arbitration record consisting of over forty volumes of transcripts and exhibits, the legal errors alleged by Creed and purportedly supported by the fragmentary excerpts from the record simply do not constitute sufficient grounds for vacating the award under 9 U.S.C. § 10.

The appellant's remaining assertions lack merit.

The judgment below is, accordingly,

Affirmed.