570 S.E.2d 551

Frank LAURO, d/b/a Colonial Restoration, Respondent,

v.

Kuldar VISNAPUU, Sandra Visnapuu, and Union Federal Savings Bank of Indianapolis, Defendants,

Of Whom Kuldar Visnapuu and Sandra Visnapuu are, Appellants.

No. 3546.

Court of Appeals of South Carolina.

Submitted May 6, 2002.

Decided Sept. 9, 2002.

Rehearing Denied Oct. 17, 2002.

510

Richard S.W. Stoney and Jay T. Gouldon, of Charleston; and James B. Richardson, Jr., of Columbia, for appellants.

Richard S. Rosen and Kevin R. Eberle, of Charleston, for respondent.

HUFF, J.

This mechanic's lien foreclosure action was instituted by Frank Lauro, d/b/a Colonial Restoration (hereinafter Lauro). Kuldar and Sandra Visnapuu appeal from an order of the circuit court modifying an arbitration award in favor of Lauro. We reverse.[1]

### *FACTUAL/PROCEDURAL BACKGROUND*

Frank Lauro owns and operates Colonial Restoration, a Charleston business which provides restoration and contractor services. The Visnapuus contracted with Lauro to perform a substantial restoration project on their home located on Charleston's Meeting Street.

Lauro delivered to the Visnapuus a blank American Institute of Architects (AIA) document contract form. At the time of delivery, Lauro also prepared and delivered a proposed fill-in document for the AIA contract which provided a guaranteed maximum cost of $346,115.00 for completion of the restoration project.

Subsequently, the parties executed a proposal on December 2, 1997. Attached to the proposal was a detailed, ten page description of a "limited scope of work for renovations" to the Visnapuus' home. Specifically, the proposal included the following language:

We [Colonial Restoration] propose to furnish labor and material for renovation of the above referenced project for the maximum sum of Three Hundred and Forty-six Thousand, One Hundred and Fifteen dollars, ($346,115.00) with a limited scope of work.

The day after the Visnapuus executed the proposal, but prior to the execution of the AIA contract, Lauro met with his

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

attorney regarding what would be necessary to make the arrangement between the parties a pure cost-plus contract without a guaranteed maximum. His attorney advised him on how to fill out the AIA contract to accomplish a cost-plus contract, and Lauro thereafter had his secretary fill out the contract. Lauro failed, however, to deliver this AIA contract back to his attorney for review. As a result, the document embodied numerous troublesome oversights in regard to the guaranteed maximum provision.

During the course of the restoration, Lauro periodically billed the Visnapuus for his work, and the Visnapuus paid approximately $257,901.00 as billed. A dispute arose between the parties, however, after Lauro submitted a July 2, 1998 invoice in the amount of $111,351.00, bringing the total cost of the project to date well above $346,115.00. Work was halted on the project and these proceedings were instituted.

On July 8, 1998, Lauro filed a mechanic's lien against the Visnapuus' home and commenced this mechanic's lien foreclosure action seeking $197,560.00, together with interest, costs and attorney's fees, alleging the Visnapuus improperly refused to pay the full amount due under a cost-plus contract. Lauro further asserted causes of action for slander, interference with economic relationships, and breach of contract accompanied by a fraudulent act. The Visnapuus answered, alleging that the contract was a guaranteed maximum sum contract, not a cost-plus contract, and that they refused to permit Lauro to complete the work because the invoice exceeded the maximum contract price and Lauro had failed to comply with the contract terms. The Visnapuus also counterclaimed alleging, among other things, Lauro was guilty of negligent construction, wrongfully filing the mechanic's lien, breach of contract, fraud, negligent misrepresentation, and breach of warranty of workmanlike services.

In July of 2000, the parties consented to submit the case for arbitration. The arbitrator issued his award on August 23, finding the parties agreed to a guaranteed maximum sum contract in the amount of $346,115.00. He concluded, however, the maximum cost provision encompassed only a limited scope of work as outlined in the ten page proposal, and Lauro was entitled to payment for work he performed outside the

original scope on a separate, implied contract. The arbitrator assigned a value of $39,074.00 to work Lauro performed under this separate agreement, and awarded him that sum plus interest for one and one-third years in the amount of $4,563.19. The arbitrator specifically found interest for the entire period of a little more than two years was inappropriate because "the value of Colonial's performance was not clearly transmitted to the [Visnapuus]."

The arbitrator further found the Visnapuus had agreed to increase the original guaranteed maximum sum for work that was within the original scope of the project by $27,600.00. Accordingly, the effect of this increase was to raise the amount of the guaranteed maximum sum to $373,715.00. Having determined Lauro earned this full additional sum, he found Lauro was entitled to $27,600.00 plus interest of $5,188.85 on that amount. In addition, the arbitrator ordered the Visnapuus to pay $9,943.12 and $2,175.35, respectively, to two local suppliers for materials they provided to the project.

The arbitrator found insufficient evidence to support Lauro's claims for defamation and intentional interference of contract. He also determined the Visnapuus had failed to present sufficient evidence of deficient work by Lauro, and that the Visnapuus were not entitled to damages for increased financing charges that resulted from the filing of the mechanic's lien.

The arbitrator concluded the Visnapuus were to pay a total of $88,544.51, which included the work performed under the separate, implied contract with interest ($43,637.19), additional work performed pursuant to agreement of the parties under the contract with interest ($32,788.85), and payment to the two local material suppliers ($9,943.12 and $2,175.35). He further found Lauro had claimed a lien in the amount of $177,352.17 and the Visnapuus had offered nothing. He determined the differences between his award and the statutory fictional demand and counteroffer under S.C.Code Ann. § 29–5–10 were equal, and neither party was the prevailing party under the mechanic's lien statute. Therefore, he declined to award either party attorney's fees.

In September 2000, Lauro requested that the arbitrator modify his award to address the unpaid balance between the

amount of the original guaranteed maximum sum ($346,115.00) and the amount the Visnapuus actually paid in satisfaction of that amount ($257,901.00). Lauro requested that the unpaid balance of the maximum sum contract in the amount of $88,214.00, including $22,934.00 of retainage, be added to the arbitration award, together with interest of $16,600.54. He also sought additional interest of $2,764.15 on the original award of $39,074.00 under the implied contract. He argued the addition of these amounts would render him the prevailing party in the action, thereby entitling him to an award of attorney's fees under the mechanic's lien statute. He also argued the statute required the Visnapuus be assigned a negative value to their counteroffer by taking into account their counterclaims, which would result in him being the prevailing party in any event.

On October 9, 2000, the arbitrator held a hearing on Lauro's motion to modify the award. In response to Lauro's argument that he was entitled to the difference between the original contract amount and the sum paid by the Visnapuus, the arbitrator stated as follows:

> The question becomes—and I struggled with this; it wasn't something that was an oversight—was this: He was paid 257. We are dealing with a figure of 346 that I found and was convinced of—and I think it was unfortunate, but I was convinced of he agreed to. He did not perform the entire contract. That's undisputed.

> So the fact that there's a guaranteed maximum price contract does not guarantee the performer of the contract the guaranteed maximum sum. That was my thought process. Now I will say this, I toyed with this idea. . . . There was a difference of—between 346 and 257, roughly $90,000. I struggled. Maybe Mr. Lauro would be entitled to 12 percent on that, since it was a cost plus issue. He certainly shouldn't be entitled to recover his entire guaranteed maximum when he didn't perform all the work. That was the basis of my award.

> \* \* \*

> . . . . I did not overlook those things, but finding that it was a maximum guaranteed contract does not become, in my

judgment, a self-fulfilling prophecy, and he's entitled to the maximum guaranteed sum.

\* \* \*

So I want you to understand my thought process on it. It was not an oversight. . . . I think I put, apparently, he exceeded the maximum sum that was agreed on. I weighed that. Should he be entitled to the full amount? I had to conclude no, since he didn't complete the contract.

The arbitrator concluded he would not modify the award to include the difference between the guaranteed maximum sum and the amount paid, based on the fact that the total contract was not performed. He indicated he would look at the issue of retainage and make a determination based on that decision whether he needed to readdress the attorney's fees issue.

By letter dated October 10, 2000, the arbitrator notified the parties that he was "not inclined to change the order to allow Colonial to recover all of the 'guaranteed maximum amount,' since when Colonial left the job, the job was not complete." He indicated he was concerned with the retainage issue, and the effect a determination of that issue might have on the determination of a prevailing party for purposes of attorney's fees.

Thereafter, on October 30, 2000, the arbitrator issued his arbitration award modification. He found the only oversight he needed to address was the omission of any award of retainage. He determined relief was not warranted as to the other issues raised. As to the retainage issue, the arbitrator stated the agreement between the parties allowed for a monthly draw based on the amount of the work completed, less five percent retainage. At the last payment, the Visnapu-us had remitted a total of $257,901.00, at which point $13,598.00 had been withheld as retainage. He noted that retainage has been defined as security for protection against failure of completion, and that Lauro did not fully complete the project. The arbitrator found, however, that failure to complete the project was based on Lauro's good faith but erroneous belief that the contract was not a guaranteed maximum amount. Thus, although Lauro had no legal entitlement to the retainage expenses, he determined, pursuant to equita-

ble considerations, that Lauro was entitled to one-half of the retainage plus interest for a total amount of $8,782.00. With the addition of this amount to the award, the total award to Lauro was now $97,326.51. The arbitrator also indicated the correct amount that should have been attributed to Lauro for purposes of a demand in considering attorney's fees under the mechanic's lien statute was actually $197,560.00, the amount pled in Lauro's complaint. Thus, he found neither party was the prevailing party, even when consideration was given to the additional $8,782.00 award.

On October 31, 2000, the Visnapuus moved the circuit court to confirm the arbitrator's award. On November 3, 2000, Lauro moved the circuit court to modify, correct, or vacate the arbitrator's award. He asserted, among other things, that the arbitrator manifestly disregarded the law in denying him attorney's fees, and that the arbitrator miscalculated the total amount due him, which should have included the unpaid amounts under the contract plus interest on that amount, as well as additional interest owing on the implied contract.

By order dated December 3, 2000, the circuit court modified the arbitrator's award based on a perceived manifest disregard of the law and evident miscalculations. Specifically, the circuit court found a miscalculation of damages and modified the award by adding to the arbitrator's award the $88,214.00 difference between the $346,115.00 contract price and the $257,901.00 in payments the Visnapuus made toward the total price, and interest on this figure in the amount of $16,600.55. The circuit court also determined the arbitrator miscalculated the interest on the separate, implied contract, and that Lauro was entitled to additional interest in the amount of $2,764.15 on that award. He thus determined Lauro was entitled to a total award of $177,886.27. He further found the arbitrator manifestly disregarded the law when he refused to apply the amended mechanic's lien statute in regard to the award of attorney's fees, which required the negative value of the Visnapuus' counterclaim be considered in determining the prevailing party. The circuit court deemed Lauro the prevailing party, entitling him to attorney's fees under § 29–5–10, and ostensibly retained jurisdiction to determine the amount

of attorney's fees due.[2] This appeal followed.

## *LAW/ANALYSIS*

On appeal, the Visnapuus assert the circuit court erred in modifying the arbitrator's award. Specifically, they contend the court erred in finding the arbitrator made an evident miscalculation of figures in regard to (1) his failure to award the full maximum sum of the contract and (2) his failure to award interest on the implied contract for a two year, one month and twenty-two day period. They further assert the court erred in reversing the arbitrator's refusal to award Lauro attorney's fees. We agree.

Arbitration is not litigation carried on by other means, but is an alternative means for resolving disputes without the cost and delay of a lawsuit. *White v. Preferred Research, Inc.*, 315 S.C. 209, 212, 432 S.E.2d 506, 508 (Ct.App. 1993). Judicial review of an arbitration award is limited in scope, and any attempt to convert arbitration into a trial-like judicial proceeding is looked upon with disfavor. *Id.*

> Arbitration is a favored method of settling disputes in South Carolina. When a dispute is submitted to arbitration, the arbitrators determine questions of both law and fact. Generally, an arbitration award is conclusive and courts will refuse to review the merits of an award.

*Pittman Mortgage Co. v. Edwards*, 327 S.C. 72, 75–76, 488 S.E.2d 335, 337 (1997) (citations omitted). Review of an arbitration award is limited and the decision of the arbitrator will be vacated only under certain grounds as provided by statute, or upon the non-statutory ground of manifest disregard or perverse misconstruction of the law. *Harris v. Bennett*, 332 S.C. 238, 503 S.E.2d 782 (Ct.App.1998).

## I. Miscalculation of Figures

South Carolina Code Ann. § 15–48–140 (Supp.2001), entitled "Modification or correction of award" provides in pertinent part as follows:

---

**2.** In a subsequent hearing on the Visnapuus' motion for reconsideration, the circuit court judge stated, contrary to his written order, that he was not going to decide the issue of the amount of attorney's fees.

(a) Upon application made within ninety days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

(1) There was an evidence [sic] miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

The circuit court determined the arbitrator's failure to award Lauro the difference between the full maximum sum of the contract and the amount the Visnapuus paid was a "miscalculation." The court found the arbitrator "recognized the problem, but only corrected the award by adding just one-half of only the retainage." We disagree. The arbitrator found as a fact that Lauro failed to perform the entire contract and was, therefore, not entitled to the full amount of the difference. He repeatedly expressed that he had not overlooked the matter, but had simply concluded Lauro was not entitled to the difference between the original contract sum and the amount paid, because Lauro had not completed the contract. Further, the one-half retainage the arbitrator ultimately awarded Lauro was a portion of that retained up to the point of payment of $257,901.00 by the Visnapuus. It does not encompass any portion of the difference between the maximum sum of the contract and the $257,901.00 amount paid, as the arbitrator determined Lauro was not entitled to payment on this since the work was not completed. In other words, the retainage modification was separate from the arbitrator's conclusion on the issue of the full maximum contract sum. Even if the arbitrator's decision in this regard were erroneous, it does not constitute an evident miscalculation of figures as envisioned under § 15–48–140. That is, the arbitrator did not commit a mathematical error in computing the total amount of the award. Rather, the arbitrator consciously declined to award Lauro the full amount of the contract.

■ The circuit court also found the arbitrator miscalculated the interest on the $39,074.00 award for work performed outside the scope of the project pursuant to an implied contract. As noted by the Visnapuus, the award of interest would not necessarily be dictated by the terms of the contract between the parties, since the arbitrator awarded this amount based on a separate, implied contract. *See Mills v. William Clarke Jeep Eagle, Inc.,* 321 S.C. 150, 153, 467 S.E.2d 268, 269 (Ct.App.1996) ("[A]rbitrators need not specify their reasoning or the basis for the award as long as the factual inferences and legal conclusions supporting the award are 'barely colorable.' "). At any rate, the arbitrator clearly stated he declined to award interest for the entire period in question, based on the fact he found the value of the work was not clearly transmitted to the Visnapuus. We likewise conclude, therefore, there was no evident miscalculation of this figure. Rather, it was, again, a conscious decision of the arbitrator to award interest for a shorter period of time.

## II. Determination of Prevailing Party

We are also compelled to agree with the Visnapuus that the circuit court erred in finding the arbitrator's failure to award Lauro attorney's fees pursuant to the mechanic's lien statute evidenced a manifest disregard of the law.

Prior to June 11, 1999, S.C.Code Ann. § 29–5–10 provided, where a written offer of settlement is made by both parties, for purposes of determining which party has offered a settlement closer to the verdict reached and is thus the prevailing party under the mechanic's lien statute, if the plaintiff makes no written offer of settlement, the amount prayed for in his complaint is considered to be his final offer, and if the defendant makes no written offer of settlement, his offer is considered to be zero. S.C.Code Ann. § 29–5–10(b) (1991). If neither party made a written offer of settlement under the pre-amended version of the statute, § 29–5–10 would not apply, and the determination of a prevailing party would be within the sound discretion of the trial judge. *Seckinger v. The Vessel Excalibur,* 326 S.C. 382, 483 S.E.2d 775 (Ct.App. 1997). Subsequently, the statute was amended to provide that if the defendant makes no written offer of settlement and makes a counterclaim, the value of his counterclaim is consid-

ered to be his negative offer of settlement. S.C.Code Ann. § 29–5–10(b) (Supp.2001).

In his original award, the arbitrator found no written offers or counteroffers were made pursuant § 29–5–10. He found § 29–5–10 was amended effective June 11, 1999, and this action was commenced well before the effective date of the amendment. He thus concluded the Visnapuus' fictional statutory demand was zero. After considering his total modified award to Lauro of $97,326.51 and his determination that Lauro's demand in his complaint was for $197,560, the arbitrator concluded neither party was the prevailing party for purposes of attorney's fees under the statute.

The circuit court found there was a procedural amendment to the statute which must be given immediate effect, and the arbitrator "manifestly disregarded the law when he refused to apply the amended statute." We agree with the Visnapuus that it makes no difference whether the pre-amendment or post-amendment law applied, as there was no manifest disregard or perverse misconstruction of the law warranting modification of the arbitrator's award.

■ An arbitrator's award may be vacated where there has been a "manifest disregard or perverse misconstruction of the law." *Batten v. Howell,* 300 S.C. 545, 548, 389 S.E.2d 170, 172 (Ct.App.1990). However, this non-statutory ground requires something more than a mere error of law, or failure on the part of the arbitrator to understand or apply the law. *Id.* at 549, 389 S.E.2d at 172. "[T]he case law presupposes something beyond a mere error in construing or applying the law," and "even a 'clearly erroneous interpretation of the contract' cannot be disturbed." *Trident Technical College v. Lucas & Stubbs, Ltd.,* 286 S.C. 98, 108, 333 S.E.2d 781, 787 (1985), *cert. denied,* 474 U.S. 1060, 106 S.Ct. 803, 88 L.Ed.2d 779 (1986). While it is true the courts have not hesitated in appropriate cases to vacate an arbitration award where there is a manifest disregard or perverse misconstruction of the law, "those cases have been exceedingly rare, requiring circumstances far more egregious than mere errors in interpreting or applying the law." *Id.* "[T]he non-statutory ground of 'manifest disregard' of the law as a basis for vacating arbitration awards ... presuppose[s] 'something beyond and different from a mere

error of law or failure on the part of the arbitrators to understand or apply the law.'" *Id.* at 108–09, 333 S.E.2d at 787.

■ Here, the circuit court found the arbitrator's award evidenced a manifest disregard for the law inasmuch as the arbitrator committed an error of law by erroneously applying the pre-amendment statute and thereby determining Lauro was not the prevailing party in the action. An erroneous application of the law, however, does not constitute manifest disregard. *Harris v. Bennett,* 332 S.C. 238, 503 S.E.2d 782 (Ct.App.1998). Under the strictures set forth in *Trident* and subsequent case law construing "manifest disregard" in an arbitration case, we hold the circuit court erred in modifying the arbitrator's award to find Lauro was the prevailing party and thereby entitled to attorney's fees.[3]

For the foregoing reasons, the order of the circuit court modifying the arbitrator's award is reversed and the award of the arbitrator reinstated.[4]

**REVERSED.**

HOWARD, J., concurs.

HEARN, C.J., concurs in a separate opinion.

---

3. We find no merit to the circuit court's finding that the arbitrator was also prohibited from changing the figure for Lauro's demand (and thus his settlement offer under the statute) in the original award from $177,352.17, to $197,560.00 in his modified award. The statute clearly directs the amount prayed for in the plaintiff's complaint to be considered his final offer where no written offer of settlement is made by the plaintiff. The demand in Lauro's complaint for foreclosure on the mechanic's lien was for $197,560.00. It was Lauro himself who sought modification of the award, necessitating the arbitrator revisit the issue. The arbitrator did not modify his award in this respect, but merely reevaluated his findings, which did not change the result on the attorney's fees issue. Further, we find the decision by the arbitrator to assign a new value to Lauro's demand does not amount to a manifest disregard of the law.

4. In light of our determination that the circuit court erred in reversing the arbitrator's denial of attorney's fees to Lauro, we need not address the Visnapuus' alternative argument that the circuit court should have remanded the issue of the appropriate amount of attorney's fees to the arbitrator.

HEARN, C.J.

I concur but write separately to explain why I believe the decision by the arbitrator not to award attorney fees to the prevailing party was mere error and not manifest disregard of the law. Although vacating arbitration awards should not be taken lightly, manifest disregard of the law is established when the arbitrator recognizes the law and refuses to apply it. In South Carolina, the best definition of when this ground applies comes from this court's opinion in *Harris v. Bennett*, 332 S.C. 238, 246, 503 S.E.2d 782, 787 (Ct.App.1998), stating:

> We cannot say the arbitrators appreciated the existence of a clearly governing legal principle and decided to ignore it. *See, e.g., Marshall v. Green Giant Co.,* 942 F.2d 539 (8th Cir.1991) ("manifest disregard of the law" which allows court to intrude upon arbitrator's decision exists when arbitrator commits error that was obvious and capable of being instantly perceived by average person qualified to be an arbitrator; "disregard" implies the arbitrator appreciates the existence of a clearly governing legal principle, but decides to ignore or pay no attention to it).

Under our statutory scheme, the award of fees to the prevailing party in a mechanic's lien action is automatic and mandatory. S.C.Code Ann. §§ 29–5–10 & 20 (1991 & Supp. 2001); *T.W. Morton Builders, Inc. v. von Buedingen,* 316 S.C. 388, 402–03, 450 S.E.2d 87, 95 (Ct.App.1994). Under the statute as amended in 1999, the method of determining the prevailing party reads in part: *"If the defendant makes no written offer of settlement, the value of his counterclaim is considered to be his negative offer of settlement.* If the defendant has not asserted a counterclaim, his offer of settlement is considered to be zero." S.C.Code Ann. § 29–5–10(b) (Supp.2001) (emphasis added). However, the previous version of section 29–5–10 did not apply if neither party made a written settlement offer. *See Seckinger v. Vessel Excalibur,* 326 S.C. 382, 391, 483 S.E.2d 775, 779 (Ct.App.1997) (holding that if no written offers are made, section 29–5–10 does not apply and prevailing party, if any, is determined as a discretionary matter for the trial judge). In this case, the arbitrator found that no written offer was made by either side and believed the case was subject to the pre-amendment statute.

Under the 1999 amendment, I believe it would be manifest disregard of the law for an arbitrator to refuse to award attorney fees to the prevailing party. In this case, although I think the arbitrator erred in applying the old law, he did so under the theory that this action was filed before the 1999 amendment. Under the older version of the statute, the arbitrator had the discretion whether or not to award fees because neither side made a written settlement offer. Accordingly, I would hold the arbitrator's order falls into the mere error category and should have been confirmed by the circuit court. *See Trident Technical Coll. v. Lucas & Stubbs, Ltd.,* 286 S.C. 98, 108, 333 S.E.2d 781, 787 (1985) ("[T]he case law presupposes something beyond a mere error in construing or applying the law.").