# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Andrew Waldo; Jane Zheng; and SC Coast Properties, LLC d/b/a Keller Williams Realty, Petitioners,

v.

Michael Cousins; Founders Five, LLC d/b/a Sperry Van Ness Founders Group; and South Carolina Association of REALTORS, Respondents.

Appellate Case No. 2022-000134

―――――――

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

―――――――

Appeal From Horry County
Cynthia Graham Howe, Master-in-Equity

―――――――

Opinion No. 28201
Heard December 12, 2023 – Filed May 1, 2024

―――――――

## REVERSED

―――――――

Douglas Michael Zayicek and Holly Michelle Lush, both of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., of Myrtle Beach, for Petitioners.

Lawrence Sidney Connor, IV, of Kelaher Connell & Connor, PC, of Surfside Beach, for Respondents Michael

Cousins and Founders Five, LLC d/b/a Sperry Van Ness Founders Group.

Marcus Angelo Manos, of Nexsen Pruet, LLC, of Columbia, and Cheryl D. Shoun, of Maynard Nexsen, PC, of Charleston, both for Respondent South Carolina Association of REALTORS.

———————

**JUSTICE HILL:**    Petitioner Andrew Waldo is broker in charge of a realty company that represented the buyers in the purchase of some thirteen golf courses from National Golf Management, LLC (NGM).  Respondent Michael Cousins is broker in charge of a realty company that had represented NGM as the seller's agent in an earlier transaction where Waldo's firm represented the same buyers.  Although Cousins had no written representation agreement with anyone concerning the thirteen golf course deal, he and his company sued Waldo, Waldo's firm, one of Waldo's agents, NGM, and the buyers of the thirteen golf courses for a commission. Recognizing their membership in a local realtor association required them to arbitrate their professional dispute, Cousins, Waldo, and Waldo's agent agreed to dismiss their part of the circuit court action and transfer it to an arbitration panel. The circuit judge soon granted NGM's motion to dismiss the remaining lawsuit, ruling oral agreements for a commission were unenforceable pursuant to South Carolina statutory law.  Nevertheless, the arbitration panel later ruled Cousins was entitled to half of the commission earned on the thirteen golf course sale.  Waldo petitioned the circuit court to vacate the award.  The petition was referred by consent to the Master-in-Equity, who vacated the award, in part because the arbitration panel ignored statutory law regarding real-estate agency.

The court of appeals reversed the Master, ruling there was a "barely colorable" ground for the arbitration award based on a line of cases upholding oral and implied contracts for real estate commissions that, while in conflict with statutory law, had not been directly overruled.  We reverse the court of appeals and vacate the award.

## I.

We begin by acknowledging—and reaffirming—the rare and narrow basis upon which we may disturb an arbitration award.  S.C. Code Ann. § 15-48-130(a) (2005 & Supp. 2023).  When the attack on the award claims the arbitrator failed to follow

controlling law, we may only vacate the award where the arbitrator knew of well-defined, explicit, and clearly applicable controlling law, yet still refused to apply it. *C-Sculptures, LLC v. Brown*, 403 S.C. 53, 56, 742 S.E.2d 359, 360 (2013); *Gissel v. Hart*, 382 S.C. 235, 241, 676 S.E.2d 320, 323 (2009). In such circumstances, we have held the arbitrator exceeded his power by manifestly disregarding or perversely misconstruing the law governing the dispute. *Gissel*, 382 S.C. at 241, 676 S.E.2d at 323. This standard is met only when the award is the product of an intentional or reckless flouting of the law, not a mere error in interpreting it. *Id*. This complements the well-known rule that the form of the award need not be accompanied by any reasoning, so long as the award can be reconciled with factual inferences and legal conclusions that are at least "barely colorable." *Trident Tech. Coll. v. Lucas & Stubbs, Ltd.*, 286 S.C. 98, 111, 333 S.E.2d 781, 789 (1985) (quoting *In the Matter of Andros Compania Maritima, S.A. and Marc Rich & Co., A.G.*, 579 F.2d 691, 704 (2d. Cir. 1978)).

## II.

According to Waldo, the arbitration panel manifestly disregarded several statutes that governed real-estate agency law in awarding Cousins half of the commission for the sale of the golf courses. We agree.

In 1997, the General Assembly passed Act 24 (H.B. 3169), amending the South Carolina Code related to the South Carolina Real Estate Commission and fundamentally changed real-estate licensing. The preamble to Act 24 proclaimed its purpose included "to establish the parameters, duties, and responsibilities for agency relationships in real estate." In 2004, Act 218 (S.B. 949) made further amendments. For the dates relevant to this dispute, Acts 24 and 218 represent the controlling statute, which we will refer to as "the Act" (revisions made later by Act 170 of 2016 (S.B. 1013) were not in effect at the relevant time and consequently are not germane to our decision).

As real estate "licensees," Cousins and Waldo owed numerous duties and obligations imposed by the Act. We quote several of the pertinent ones.

"A licensee shall provide at the first practical opportunity to all buyers and sellers with whom the licensee has substantive contact: (1) a meaningful explanation of agency relationships in real estate transactions that are offered by that brokerage; (2) an agency disclosure form prescribed by the commission." S.C. Code Ann. § 40-57-139(A) (2011). "A licensee who becomes a buyer's agent shall provide an agency

disclosure form to the buyer at the time an agency agreement is signed. Acknowledgement of receipt of the form must be contained in the buyer agency agreement." S.C. Code Ann. § 40-57-139(C) (2011). "[B]efore ratification of the real property sales agreement, the real estate licensee must represent either the buyer or seller in an agency capacity in order to be in compliance with this chapter." S.C. Code Ann. § 40-57-139(E) (2011).

Cousins disputes that these statutory sections bar his right to a commission. He claims his right to a commission arises not from being the seller's or buyer's agent, but as a cooperating broker with the buyer's agent through an implied contract with the buyer's agent.

Only four types of agency are authorized by the Act: a "seller agency," a "buyer agency," a "disclosed dual agency," or a "subagency." S.C. Code Ann. § 40-57-137(A) (2011 & Supp. 2014). A cooperating broker, or "subagent" is defined as "a designated broker and all associated licensees engaged by a broker of another company to act as agent for his client." S.C. Code Ann. § 40-57-137(N) (2011 & Supp. 2014). "A subagent owes the same duties and responsibilities to the client as the client's primary broker pursuant to subsections (C) and (H)." *Id*. Subsection (C) and (H), in turn state a broker "shall" comply with all provisions of the Act. S.C. Code Ann. §§ 40-57-137(C)(4) and (H)(4) (2011 & Supp. 2014). They also require a broker to have a written agency agreement with the buyer or seller. S.C. Code Ann. §§ 40-57-137(C)(1) and (H)(1) (2011 & Supp. 2014). Because Cousins claimed to be a cooperating broker with the buyer's agent, he was still required to have a buyer's agency agreement that "must be in writing and must set forth all material terms of the parties' agency relationship," including "an explanation of how compensation will be divided among participating or cooperating brokers, if applicable." S.C. Code Ann. § 40-57-135(D)(4)(d) (2011). These provisions work in concert with § 40-57-139(G), which confines the creation of real estate agency to written agreements and forbids oral or implied ones:

> For all real estate transactions, no agency relationship between a buyer, seller, landlord, or tenant and a brokerage company and its affiliated licensees exists unless the buyer, seller, landlord, or tenant and the brokerage company and its affiliated licensees agree, in writing, to the agency relationship. No type of agency relationship may be assumed by a buyer, seller, landlord, tenant, or licensee or created orally or by implication.

S.C. Code Ann. § 40-57-139(G) (2011).

The Act has therefore sewn up the loophole Cousins insists exists for subagents or cooperating brokers.

Cousins' backup argument is that he was entitled to a commission based on a series of cases that recognized a realtor's right to a commission through an oral or implied contract. *United Farm Agency v. Malanuk*, 284 S.C. 382, 384, 325 S.E.2d 544, 545 (1985); *Batten v. Howell*, 300 S.C. 545, 549, 389 S.E.2d 170, 172 (Ct. App. 1990); *Hackler v. Earl Wiegand Real Est., Inc.*, 295 S.C. 396, 398, 368 S.E.2d 686, 687 (Ct. App. 1988); *Hilton Head Island Realty, Inc. v. Skull Creek Club*, 287 S.C. 530, 536, 339 S.E.2d 890, 893 (Ct. App. 1986).

But these cases were decided before the Act became the law, and the Act commands "[t]he provisions of this section which are inconsistent with applicable principles of common law supersede the common law." S.C. Code Ann. § 40-57-137(Q) (2011 & Supp. 2014); *see also Singleton v. State*, 313 S.C. 75, 83, 437 S.E.2d 53, 58 (1993) ("The common law remains in full force and effect in South Carolina unless changed by clear and unambiguous legislative enactment.").

The record tells us the arbitrators were not only aware of the Act but had in hand the unappealed circuit court order dismissing similar claims arising from the same transaction on the ground that § 40-57-139(G) had rendered oral and implied contracts for real estate commissions unenforceable. Indeed, during the arbitration hearing, the chairman of the panel announced:

> There has been discussion from [Waldo] about representation, who represents who in the transaction, what was in writing—and I just want to remind all the parties here, including the panel, that we are not at a grievance hearing, we are at an arbitration hearing, and we are here to talk about the money dispute. And I understand the conversation. What we need to focus on is the procuring cause.

This foreshadowed the award of one-half the commission to Cousins. We can glean no legal rationale justifying the award other than the "procuring cause" theory underlying the oral and implied agency recognized by *Malanuk*, *Skull Creek,* and the other common law cases that have now been superseded by statute.

Arbitration rests on consent of the parties, where parties freely exchange the expansive litigation rights court actions provide for the speed, informality, and finality arbitration promises. But when parties calculate the benefits and risks of their exchange, they do not bargain to have their dispute resolved by whim. Arbitration is designed to be the end, not the beginning, of legal wrangling, and our strict manifest disregard standard for vacatur honors this design by ensuring the legal end is not a lawless one. We have progressed from the days, described by the 19th century Scottish judge, when an arbitrator "may believe what nobody else believes, and he may disbelieve what all the world believes. He may overlook or flagrantly misapply the most ordinary principles of law, and there is no appeal for those who have chosen to submit themselves to his despotic power." Noah Rubins, "*Manifest Disregard of the Law" and Vacatur of Arbitral Awards in the United States*, 12 Am. Rev. Int'l Arb. 363, 367 (2001) (quoting *Mitchell v. Cable*, [1848] 10 D. 1297). Courts may now vacate an arbitration award, but only when it is untethered from controlling legal principles known to, but shrugged off by, the arbitrator. This may occur when an arbitrator substitutes his personal policy views in place of a plainly binding legal principle. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 676–77 (2010) ("In sum, instead of identifying and applying a rule of decision derived from the FAA or either maritime or New York law, the arbitration panel imposed its own policy choice and thus exceeded its powers."). That is what happened here. Whatever the panel's motives, the only legal justification for their award rests on a theory drawn from the "procuring cause" line of cases that upheld oral and implied real estate agency agreements. That line ended with, and was superseded by, the Act's insistence on written agency agreements. The extinction of the line removed any "arguably colorable" basis for the award. An arbitrator cannot revive what has been repealed. As we have held, "manifest disregard is an exacting standard, but it is not insurmountable." *C-Sculptures, LLC*, 403 S.C. at 58, 742 S.E.2d at 361.

Because the manifest disregard standard has been met, the arbitration award is vacated, and the court of appeals' opinion is

**REVERSED.**

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**